**In re Randolph Richard McKINNEY, Debtor.**

**Bankruptcy No. B89–1737.**

United States Bankruptcy Court, N.D. Ohio, E.D.

Sept. 27, 1990.

Harvey S. Morrison, Cleveland, Ohio, for debtor.

Alan Treinish, Cleveland, Ohio, trustee.

Lynn C. Toler, Cleveland, Ohio, for Pennsylvania Higher Educ. Assistance Agency.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

## I.

The matter before the Court is the motion of Randolph Richard McKinney (Debtor), to show cause why Pennsylvania Higher Education Assistance Agency (PHEAA) should not be held in contempt for having violated the injunctive provisions of § 524 of the Bankruptcy Code. [11 U.S.C. § 524(a)(2) ]. Upon a duly scheduled hearing, the Court has examined the pleadings, arguments of counsel, and the record, generally, to arrive at the following findings and conclusions:

## II.

The facts are undisputed and the parties have stipulated as follows:

1. The Debtor received three (3) guaranteed student loans. The first was in 1979, the second was in 1981 and the third was in 1983. The Debtor established repayment on these loans with the First National Bank of Pennsylvania in March of 1984. He maintained his payment schedule with them until he requested that his loans be consolidated. He made an application for consolidation on or about July 14, 1988, which was approved thereafter, and the first payment due under the new note was in October, 1988. First National Bank of

Pennsylvania was paid off by PHEAA in October, 1988.

2. Debtor commenced payments under the new obligation, and continued to make such payments until shortly before May 4, 1989, when he filed his voluntary petition in this proceeding. STUDENT LOAN SERVICES CENTER ["SLSC"], the servicer of the loan for PHEAA, was scheduled as a creditor on Schedule A–3, as were Edinboro State College and West Virginia University, the institutions which are believed to have been the recipients of the proceeds. On or about May 24, 1989, PHEAA wrote Debtor's counsel, acknowledging notification of the pending Chapter 7 case.

3. There was never a suspension of payments under the original note or the consolidated loan.

4. There followed a series of letters and telephone calls between counsel for Debtor and representatives of PHEAA, dealing with the Debtor's assertion that the debt had been discharged and PHEAA's assertion that the debt had not been discharged.

5. Debtor was granted a discharge on or about August 4, 1989. Neither the Debtor, PHEAA nor SLSC sought a determination that the debt was dischargeable, each party taking the position that the statute [11 U.S.C. § 523(a)(8)] was applicable, but applying different interpretations thereto.

6. PHEAA has continued to make demand upon Debtor for repayment of the "student loan" obligation, and may have reported the alleged delinquency to credit reporting agencies and have threatened legal action to obtain payment of the alleged debt. (See Stipulations filed August 10, 1990).

### III.

The principle dispositive issue is whether or not the student loans are dischargeable under § 523(a)(8)(A) of the Bankruptcy Code. [11 U.S.C. § 523(a)(8)(A)]. The resolution of this issue depends solely upon a determination of the date the student loans became due.

1. The Debtor does not argue the loan is dis-

### IV.

The dischargeability of an educational loan guaranteed or insured by a governmental unit or a nonprofit institution is governed by 11 U.S.C. § 523(a)(8), which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, unless—

A. Such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

B. excepting such debt from discharge under this paragraph will impose undue hardship on the debtor and the debtor's dependents; [1]

Prior to the enactment of the Bankruptcy Code, dischargeability was governed by section 439A of the Higher Education Act. 125 Cong.Rec. § 9168 (daily ed. July 11, 1979) (remarks of Sen. Deconcini). The enactment of the Bankruptcy Code repealed section 439A of the Higher Education Act of 1965. *Id.* This repeal was done with the intention of shifting the location of the nondischargeability provision for student loans from the Higher Education Act to the Bankruptcy Code, 11 U.S.C. *Id.* Therefore, 11 U.S.C. § 523(a)(8) controls the dischargeability of student loans. *See, 3 Collier on Bankruptcy* § 523.18, at 523–182 (15th ed. 1989).

The nondischargeability of student loans under bankruptcy proceedings were purportedly included in the Bankruptcy Code because investigations had revealed a number of students were filing bankruptcy solely to discharge their loan obligations. 125 Cong.Rec. § 9168 (daily ed. July 11, 1979) (remarks of Sen. Deconcini). Congress included a five year limitation in an

charged under the hardship provision.

attempt to limit such abuse. *Id.* The five year limitation excludes periods of deferment because of the possibility of a student being able to defer repayment upon resuming studies. S.Rep. No. 230, 96th Cong.2d Sess. 1–3, *reprinted in* 1979 U.S.Code Cong. & Admin.News 936, 938. The legislative history reveals that Congress was aware of abusive tactics by students and acted to address the situation. A five year period of time was determined to provide fair protection to both the federal government and the honest student who could not repay the debt. 125 Cong.Rec. § 9168 (daily ed. July 11, 1979) (remarks of Sen. Deconcini).

■ The provisions of 11 U.S.C. § 523(a)(8) are self-executing and, as such, do not require a complaint to be filed to determine dischargeability. S.Rep. No. 989, 95th Cong., 2d Sess. 79, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5865. Accordingly, if the loan first became due more than five years prior to the petition date it is automatically discharged; if not, the debt survives the proceedings. The statute and legislative history suggests only one event that alters the five year period and that is the exercise of deferment periods.

In 1986, the Higher Education Act was amended to include a provision for the consolidation of loans for students with multiple loans. This section, 20 U.S.C. § 1078–3, provides in part:

*Consolidation loans*

(d) Termination of authority.

The authority to make loans under this section expires at the close of September 30, 1992. Nothing in this section shall be construed to authorize the Secretary to promulgate rules or regulations governing the terms or conditions of the agreements and certificates under subsection (b) of this section. Loans made under this section which are insured by the Secretary shall be considered to be new loans made to students for the purpose of section 1074(a) of this title.

In reference to a consolidation loan being a new loan, this section refers to 20 U.S.C. § 1074, entitled Scope and Duration of Federal Loan Insurance Program, and provides:

(a) Limitations on amounts of loans covered by Federal insurance

The total principal amount of new loans made and installments paid pursuant to lines of credit (as defined in section 1085 of this title) to students covered by Federal loan insurance under this part shall not exceed $2,000,000,000 for the period from July 1, 1976, to September 30, 1976, and for each of the succeeding fiscal years ending prior to October 1, 1992. Thereafter, Federal loan insurance pursuant to this part may be granted only for loans made (or for loan installments paid pursuant to lines of credit) to enable students, who have obtained prior loans insured under this part, to continue or complete their educational program; but no insurance may be granted for any loan made or installment paid after September 30, 1997.

Additionally, paragraph (b) of § 1074 provides:

(b) Apportionment of amounts

The Secretary may, if he or she finds it necessary to do so in order to assure an equitable distribution of the benefits of this part, assign, within the maximum amounts specified in subsection (a) of this section, Federal loan insurance quotas applicable to eligible lenders, or to States or areas, and may from time to time reassign unused portions of these quotas.

■ PHEAA argues that a consolidation loan under the Higher Education Act constitutes a new loan and thus changes the date the loan first becomes due. PHEAA further contends the new loan first becomes due on the date the first payment is due on the consolidated note. The Debtor, however, contends that a loan consolidation under the Higher Education Act does not constitute a new loan and has no effect on the date the loan first becomes due. The legislative history of the amendments do not suggest what, if any, effect the amendments are to have on the dischargeability of student loans in bankruptcy proceedings. This appears to be an issue of first

impression, requiring the Court to construe the dischargeability of a student loan that has been consolidated under 20 U.S.C. § 1078–3.

■ The starting point for interpreting a statute is the language of the statute itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982); *Consumer Product Safety Commission v. GTE Sylvania,* 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Upon examining Title 20 U.S.C. § 1078–3, which addresses consolidated loans, the language referring to such loans as "new loans" is found only in paragraph (d), entitled "Termination of Authority." The title indicates, and the section provides, the authority to make loans under this section expires on September 30, 1992. This section apparently addresses the time frame in which consolidated loans can be made. This paragraph closes by providing that these loans are to be new loans made to students for the purpose of section 1074(a) of this title.

■ Section 1074(a) is entitled Limitations On Amounts of Loans Covered by Federal Insurances, and places a two billion dollar limit on the amount of loans that can be federally insured within a given time period. 20 U.S.C. § 1074(a). Statutory provisions are not to be construed in isolation but together with other related provisions. *Kifer v. Liberty Mutual Ins. Co.,* 777 F.2d 1325 (8th Cir.1985); *United Mine Workers of America v. Andrus,* 581 F.2d 888 (D.C.Cir.1978). Reading sections 1078–3(d) and 1074(a), *in pari materia,* it appears that consolidated loans under sections 1078–3(d) are considered new loans under sections 1074(a) for accounting purposes to ensure that the loans federally insured do not exceed the two billion dollar limitation for the prescribed time period. The legislative history suggests the reason for section 1078–3 is to protect lenders from having the best accounts "creamed off the top" by outside lenders. H.R. No. 383, 99th Cong., 2d Sess. 44 *reprinted in* 1986 U.S.Code Cong. & Admin.News 2572, 2615. This is accomplished by requiring the borrower to first seek a consolidation loan from the initial lender before going to another lender. *Id.* Ostensibly, consolidations under section 1078–3 benefit the initial lender. There is no language in the legislative history addressing consolidation of loans that suggests an affect on the dischargeability of student loans in bankruptcy proceedings. Apparently, Congress did not intend such a result as the 1978 Bankruptcy Code effectively repealed section 439A of the Higher Education Act which formerly dealt with the matter. In no instance under these 1986 amendments, including § 1078–3, did the Congress expressly manifest an intent to modify the dischargeability of student loans as argued by the PHEAA.

Other factors lend support to the conclusion that Congress did not intend for the 1986 amendments to the Higher Education Act to affect the dischargeability of student loans. First, section 1078–3 has a termination date of September 30, 1992. It is inconceivable that the Congress would promulgate a provisional Code section under one Title which impacts upon another Title without enacting corresponding provisions in the other affected title. Secondly, section 1078–3 can be used only if a student has outstanding loans totalling at least $5,000.00. 20 U.S.C. § 1078–3(a)(3)(A). If this section is to have an effect on the dischargeability of student loans pursuant to 11 U.S.C. § 523(a)(8), it would have a disparate effect on those loans which are less pursuant to 11 U.S.C. § 523(a)(8), it would have a disparate effect on those loans which are less than $5,000.00. Arguably, if a student consolidates a loan more than once in order to effect lower payments, five years can pass with the student having made only nominal payments on the obligation. This would be an abuse of the consolidation provision if done with such intent, but to characterize all consolidations as new loans subject to a new five year period, would penalize the honest student borrower who cannot repay the loan when due. The purpose of 11 U.S.C. § 523(a)(8) is to provide equal treatment for student loans in the context of bankruptcy nondischargeability proceedings. S.Rep. No. 230,

96th Cong., 2d Sess. 1–3, *reprinted in* 1979 U.S.Code Cong. & Admin.News 936.

 Identifying the object or purpose of the legislation is more important than identifying the subject matter in determining whether different statutes are closely enough related to justify interpreting one in light of the other. *In re Burke Mountain Recreation, Inc.,* 64 B.R. 799 (Bankr. D.Vt.1986). In conjunction with the above-stated purpose of § 523(a)(8), the purpose of 20 U.S.C. § 1078–3 is to protect lenders from losing their best accounts to outside consolidation lenders and further to avoid forcing students into default with high monthly payments. H.R. No. 383, 99th Cong.2d Sess. 44, *reprinted in* 1986 U.S. Code Cong. & Admin.News 2615. Where statutes such as the discharge provisions of § 523(a)(8) and those of 20 U.S.C. § 1078–3 have significantly different purposes, they should not be read, *in pari materia. United Shoe Workers of America AFL–CIO v. Bedell,* 506 F.2d 174 (D.C.Cir.1974).

Accordingly, the consolidation of a student loan under 20 U.S.C. § 1078–3 does not change the date the loan first became due for determining the dischargeability of said loan under 11 U.S.C. § 523(a)(8)(A). Therefore, the debtor's obligation to PHEAA was discharged, as the student loans first became due more than five years before the filing of the petition.

V.

 Lastly, the Debtor requests that sanctions be assessed against PHEAA because of PHEAA's collection efforts subsequent to the Debtor's discharge, in violation of 11 U.S.C. § 524(a)(2), which provides:

> A discharge in a case under this title—
>> operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived..... 11 U.S.C. § 524(a)(2).

It is uncontested that the PHEAA pursued collection efforts post-discharge. Such efforts after the Debtor's discharge

were apparently based on the PHEAA's position advanced in these proceedings, although an incorrect one. Generally, where a case is one of first impression, sanctions against a party should not necessarily issue based upon the conduct complained of. See, *In re Griffin,* 108 B.R. 717 (Bankr.W. D.Mo.1989). Section 523(a)(8) is self-executing and, while the collection efforts of PHEAA were improper, they were not so egregious as to warrant an imposition of sanctions based on its belief that the loans were not discharged.

Accordingly, the Debtor's request for sanctions against PHEAA is hereby denied.

IT IS SO ORDERED.