**In re Patricia Gayle MARTIN, Debtor.**

**Patricia Gayle MARTIN, Plaintiff,**

v.

**GREAT LAKES HIGHER EDUCATION CORPORATION, Defendant.**

**Adv. No. 91–4229–1.**

United States Bankruptcy Court,
W.D. Missouri.

Feb. 28, 1992.

Neil S. Sader, Brown & Thiessen, P.C., Kansas City, Mo., for plaintiff.

Lloyd J. Blaney, Dew & Blaney, Madison, Wis., for defendant.

## MEMORANDUM OPINION

KAREN M. SEE, Bankruptcy Judge.

The issue is whether consolidation of two student loans into a new government-guaranteed loan alters the date when the loan "first becomes due" and renders the consolidation loan nondischargeable. This is a core proceeding and the court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and 1334(b).

### STIPULATED FACTS

The parties stipulated to the following:

1. Debtor consolidated two student loans by an Application/Promissory Note payable to Great Lakes Higher Education Corporation, executed on April 6, 1987.

2. The two loans consolidated were student loans used for the purposes intended. On the first loan, the disbursement date was September, 1983; the lender was the Missouri Department of Higher Education. On the second, the disbursement date was September, 1984; the lender was the Higher Education Assistance Foundation.

3. Payments were first made on both loans more than five years before Debtor filed a Chapter 7 case on December 4, 1990, and the loans consolidated by the loan at issue would have been dischargeable in the bankruptcy under 11 U.S.C. § 523(a)(8)(A).

4. The Note at issue was a consolidation loan. The lender paid off the debts this debtor owed the Missouri Department of Higher Education and the Higher Education Assistance Foundation.

5. The first payment on the consolidation note was due May 7, 1987; the balance on the note is $9,174.31 as of December 4, 1990.

6. The Note refers to this obligation as a new Note, and states that the previous loans were consolidated by this Note pursuant to § 428C of the Higher Education Act of 1965, as amended.

### CONCLUSIONS OF LAW

The consolidated loan is a new loan for educational purposes. It first became due on May 7, 1987, the date of the first payment under the consolidation note. Debtor filed a Chapter 7 case on December 5, 1990, less than five years before the new loan first became due, so the loan is nondischargeable under § 523(a)(8)(A).

Debtor, citing *In re McKinney*, 120 B.R. 416 (Bankr.N.D.Ohio 1990), argues that: 1) the loan is dischargeable because the original notes first became due over five years ago; 2) the court should consider only the original notes and not any subsequent obligation in determining dischargeability; 3) Congress did not intend to affect dischargeability of student loans when it provided for loan consolidation; and 4) modifying the nondischargeability period for consolidation loans will lead to disparate and unfair results because consolidation is available under the statute only for student loans greater than $5,000.00.

Great Lakes Higher Education Corporation, citing the statutory language and legislative history of the consolidation provisions of the Higher Education Act, argues that the old notes cannot be considered because: 1) they were paid and extinguished; and 2) the language of the consolidation agreement supports a finding that the consolidated student loan is a new loan for educational purposes that first becomes due after the consolidation date.

■ Discharge of a debt is determined by the law in effect at the time debtor files the petition.[1] *Matter of Bruce*, 3 B.R. 77 (Bankr.Ill.1980). The applicable statute is the previous version of 11 U.S.C. § 523(a)(8)(A) which excepted from discharge

> an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution of higher education, unless
>
> (A) such loan first became due before five years (exclusive of any applicable

suspension of the repayment period) before the date of filing. . . .

First, the court finds the consolidation loan is an educational loan covered by 11 U.S.C. § 523(a)(8)(A). The consolidation loan is from a program funded by a governmental unit and is a loan authorized under the Higher Education Act. 20 U.S.C. § 1087–2(*o*) (West 1990).

■ Second, this educational loan first became due within five years before bankruptcy. A student loan first becomes due when the first installment is due. *In re Nunn*, 788 F.2d 617, 619 (9th Cir.1986). The loan which existed on the date of bankruptcy first became due on May 7, 1987, when the first payment was due on the consolidation loan. Debtor filed Chapter 7 on December 4, 1990. The consolidated loan is nondischargeable because it first became due less than five years before the bankruptcy filing.

Other courts have reached a different result. *In re McKinney* 120 B.R. 416 (Bankr.N.D.Ohio 1990). *In re Brown*, 4 B.R. 745 (Bankr.E.D.Va.1980); *In re Ziglar*, 19 B.R. 298 (Bankr.E.D.Va.1982); *In re Washington*, 41 B.R. 211 (Bankr. E.D.Va.1984). However, several factors warrant the conclusion that the consolidated loan is nondischargeable.

The statutory language is clear that a consolidated loan is considered a new loan for educational purposes under the federally insured student loan program.[2] The lender on the consolidation note was a different entity than the lenders on the original notes, and, as expressly provided by 20 U.S.C. § 1078–3(b)(1)(D), the old notes were discharged. The loans are designated as new loans to students in 20 U.S.C. § 1078–3(d), which provides:

> make, notwithstanding any other provision of this part limiting the maximum insured principal amount for all insured loans made to a borrower, *a new loan to the borrower* in an amount equal to the unpaid principal and accrued unpaid interest on the old loans. *The proceeds of the new loan shall be used to discharge the liability on such old loans.* (emphasis added.)

---

1. In the Crime Control Act of 1990, Congress amended § 523(a)(8)(A) to extend to seven years the period in which student loans are nondischargeable. Under § 3631, for Chapter 7 cases the amendments were effective 180 days after November 29, 1990, the enactment date. Pub.L. 101–647, Title XXXVI, §§ 3621, 3631, 104 Stat. 4964, 4965, 4966 (1990). This case was filed during the 180 day period.

2. Before October 17, 1986, 20 U.S.C. § 1087–2(*o*) also provided that Sallie Mae could

Loans made under this section which are insured by the Secretary shall be considered to be *new loans made to students* for the purpose of section 1047(a) [1074(a) ] of this title. (emphasis added.)

Section 1074(a) provides that

the total principal amount of new loans made and installments paid pursuant to lines of credit ... to students covered by Federal loan insurance under this part shall not exceed $2,000,000,000 for the period from July 1, 1976, to September 30, 1976, and for each of the succeeding fiscal years ending prior to October 1, 1992.

In 1986, Congress rejected a proposed Senate amendment to the Higher Education Act that would have provided that

[c]onsolidation loans will not be considered as new loans for the purposes of the limitation on the total amount of loans that may be insured under the Federal Insured Student Loan Program....

H.R.Rep. No. 589, 99th Cong., 2d Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 2572, 2699, 2757.

The court is unpersuaded by the statutory analysis in *In re McKinney*, 120 B.R. 416 (Bankr.N.D.Ohio 1990), which discharged a consolidation loan where payment on three guaranteed student loans started in 1984; debtor consolidated the notes in 1988; and seven months later, debtor filed under Chapter 7. *McKinney* held that for dischargeability, the relevant date is the date the original loans first became due, notwithstanding execution of a new consolidation loan before bankruptcy.

*McKinney* reasoned that Congress intended consolidation loans to be considered new loans in § 1087-3 only for purposes of accounting against the federally insured student loan assistance program funds and were not intended as new loans for purposes of § 523(a)(8)(A). *McKinney* found it significant that Congress failed to specify in the amendments to Title 20 how consolidation loans were to be treated in bankruptcy and concluded that Congress did not intend for consolidation to affect dischargeability.

This court respectfully disagrees with *McKinney*. By definition, the consolidation loan was a new loan. It had different, more favorable, repayment terms than the old note. It was from a different lender and it discharged the old loans. As to evidence of legislative intent from failure to include reference to bankruptcy treatment in the consolidation legislation, this court finds it equally significant that Congress expressly referred to the consolidated loans as new student loans and provided that they discharged the old loans. The legislative history of § 523(a)(8)(A) indicates Congress intended to preserve the financial integrity of educational loan programs by limiting the instances in which student loans could be discharged in bankruptcy because of the growing number of defaults. 124 Cong.Rec. 1791–1792 (1978) (remarks of Reps. Ertel and Mottl). The decision herein is consistent with that legislative purpose.

As argued by Great Lakes, the failure to address bankruptcy dischargeability in the consolidation provisions of the Higher Education Act is not significant. Generally, bankruptcy treatment of student loans authorized by the Higher Education Act is covered in the Bankruptcy Code, in § 523(a)(8)(A), and not in the Higher Education Act. Thus, it is necessary only to determine that the loan at issue here is an educational loan because it is one governed by the Higher Education Act. With that finding, the dischargeability provisions of 11 U.S.C. § 523(a)(8)(A) apply.

The terms of debtor's Application/Promissory Note also support a finding that the consolidation transforms the pre-existing student loan obligations into an entirely new loan. Explanatory materials accompanying the Promissory Note state:

[w]hen you open your account, we pay off the outstanding balances on the loans you're consolidating, and we issue you a new consolidated SMART LOAN Account.

The Note provides:

It is my understanding that Sallie Mae will advance funds on my behalf to creditors currently holding eligible loans

named above which I herein select for consolidation in my SMART loan account. The funds so advanced by Sallie Mae will be disbursed to the holders of the loans above in order to pay off those loans.

On the reverse of the Note, under the title "Security and Endorsement; Defenses," debtor agreed that: "I undertake a new obligation which is not subject to any defenses I might have with respect to the loans selected for consolidation."

■■■ Cancellation of the old notes by payment in full discharges all obligations on both sides on the old notes and extinguishes the old notes. *Golden Sun Feeds, Inc. v. Dugan*, 682 S.W.2d 173, 176 [5, 6] (Mo.App.W.D.1984); *Wilson v. Midstate Industries, Inc.*, 777 S.W.2d 310, 312–13 (Mo.App.W.D.1989); *Landmark KCI Bank v. Marshall*, 786 S.W.2d 132, 141, 143 [15], [17, 18] (Mo.App.W.D.1989). After entering into a new contract, claims arising out of the old contract are deemed conclusively waived. *Matter of Brownsberger*, 61 B.R. 22, 25 (Bankr.W.D.Mo.1986), citing *Phillips Petroleum Co. v. Rau Const. Co.*, 130 F.2d 499, 502 (8th Cir.1942). The effect is similar in the present situation: consolidating the student loans by entering into a new loan obligation and paying off the old notes extinguished the dates the old loans first became due for purposes of dischargeability under § 523(a)(8)(A).

*McKinney* raises the risk of indefinitely extending the period of nondischargeability for consolidated loans. That concern is satisfied by 20 U.S.C. § 1078–3(a)(3)(B), which provides that an eligible student loan may be consolidated only once.

■■■ Also unpersuasive is the argument that finding the consolidation note nondischargeable will result in disparate treatment of debtors with student loans less than $5,000.00. There is also disparity in the express application of § 523(a)(8)(A) only to loans made, insured or guaranteed by a governmental unit or a nonprofit institution.[3] The treatment may be disparate, but it is not unfair. Where social and economic legislation is challenged on equal protection grounds under the Due Process Clause of the 5th Amendment, which protects against discriminatory treatment by the federal government, the "rational basis" test is applicable. *U.S.R.R. Retirement Board v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). The alleged discriminatory treatment must be rationally related to legitimate government objectives. *Schweiker v. Wilson*, 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981). Here, the treatment is rationally related to a legitimate government objective to insure that financial integrity of the student loan system is maintained and to limit the instances in which student loans can be discharged in bankruptcy. In addition, limiting consolidation to loans in excess of $5,000 is reasonable. Consolidating and extending smaller loans may not be cost-effective. Consolidation is beneficial to both lender and borrower where the balance is too big for the borrower to pay according to original terms. It is reasonable to assume that for balances below $5,000, the original terms of repayment could be met, so consolidation was not provided.

The decision in this case is consistent with the Congressional purpose underlying § 523(a)(8)(A) to preserve the financial integrity of the educational loan system (as further evidenced by the amendment which extended the nondischargeability period to seven years). Congress adopted consolidation provisions in an effort to reduce defaults by making repayment terms sensitive to the borrower's financial situation. H.R.Rep. No. 383, 99th Cong. 2d Sess. (1986), reprinted in U.S.C.C.A.N. 2574, 2614. Debtor voluntarily entered into the consolidation agreement and reaped the benefits of the consolidated loan in the form of lower monthly payments, more favorable interest rates, and an extended re-

**3.** In fact, there is disparate treatment in the legislation which changed the nondischargeability period from five to seven years. In Chapter 13 the effective date was November 29, 1990, but in Chapter 7 the effective date was May 28, 1991, so for a 180 day period, dischargeability varied, depending on which Chapter debtors chose or which Chapter debtors were eligible for. See n. 1.

payment period. It would be inequitable for the borrower to extinguish the old notes, eradicate the troublesome parts of old loans, accept the significant benefits provided by the legislation, and then claim the favorable repayment dates of the old notes are still binding in bankruptcy. The trade-off for the benefits is both a waiver of defenses on the note and adjustment of the nondischargeability period from the date of the new obligation. The nondischargeability period insures that debtors have made a good faith effort to pay off a significant portion of the balance on student loans before filing bankruptcy.

Section 523(a)(8)(A) does not provide for an early discharge of a student loan obligation that has already been substantially altered in favor of debtor through the loan consolidation program. To allow such a result would encourage abuse of both the student loan program and the bankruptcy courts by borrowers seeking to avoid payment of most of the balances on the student loans. Such borrowers could first avoid payment by obtaining a consolidation loan to reduce payments, and then later file bankruptcy to avoid the balance. This would be contrary to the legislative intent of both the Higher Education Act and the Bankruptcy Code to require debtors to pay a significant portion of the student loan before being allowed to discharge it.

Although debtor did not allege undue hardship under § 523(a)(8)(B), it is noted that a significant amount of other debts were discharged in the bankruptcy, so debtor should be able to pay the student loan ·obligation without undue hardship.

For the foregoing reasons, it is hereby

ORDERED that the consolidated student loan is not discharged, and judgment is entered for defendant and against plaintiff Patricia Martin for $9,174.31, pre-judgment and post-judgment interest at the contract rate from December 4, 1990, and costs.