**UNITED STATES**

v.

**James T. McGRATH.**

**Civ. No. K–90–944C.**

United States District Court,
D. Maryland.

Aug. 6, 1992.

Richard D. Bennett, U.S. Atty. and Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., for the U.S.

Brenda A. Clark, Mann & Clark, P.A., Baltimore, Md., for James T. McGrath.

FRANK A. KAUFMAN, Senior District Judge.

On April 3, 1990, the Government filed a complaint in this Court alleging that defendant, James T. McGrath, was indebted to the United States in the amount of $20,-644.15 and that defendant had failed to repay that debt. Defendant, in a *pro se* response, takes the position that the debt had been discharged in bankruptcy in 1987. On November 27, 1990, the Government filed a Motion for Judgment on the Pleadings, or in the alternative, for Summary Judgment. After defendant failed to respond, this Court, on January 3, 1991, granted that motion and on January 20, 1991, entered judgment in favor of the Government. On October 10, 1991, defendant, having retained counsel, filed a Motion to Vacate Judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. The governing determination in the case involves application of 11 U.S.C. 523(a)(8) and its provision calling for discharge of certain loans which became due more than five years before the debtor filed his petition in bankruptcy.

## I.

Defendant obtained four student loans from University Loans Service, Inc., the first in 1971 and the last, in 1981. Those loans first became due in February 1982. On April 18, 1983, defendant executed a promissory note in favor of the Student Loan Marketing Association ("Sallie Mae"), guaranteed by the United States Department of Education. That loan consolidated the four previously made student loans into one note. As a result of that consolidation, the earlier notes were paid off. In addition, the governmentally guaranteed 1983 consolidation loan provided certain benefits not available under the earlier loans, such as a longer repayment period with payment amounts based upon income.

The first payment under the consolidation loan became due on July 1, 1983, less than four years from May 18, 1987, the date upon which defendant filed his petition in bankruptcy. The Government contends that the consolidation loan was not discharged because the time for the first payment due under the consolidated loan, i.e., July 1983, occurred less than five years prior to the date of defendant's bankruptcy filing.

Defendant asserts that the consolidation of the student loans is irrelevant to the determination of the date the loans first became due under the applicable law because, under the statute, the court must consider the date the *original* notes became due and not the date the consolidated loan became due.

## II.

The Bankruptcy Code provides a number of exceptions to the various bankruptcy discharge provisions. One of those exceptions, 11 U.S.C. § 523(a)(8) provides:

A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or a nonprofit institution, unless—

(A) such loan first became due before five years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition, or

(B) excepting such debts from discharge under this paragraph will impose

an undue hardship on the debtor or the debtor's defendants.

11 U.S.C. § 523(a)(8) (1988).[1]

## III.

In order for a loan to be a dischargeable debt under Section 523(a)(8)(A), the loan must have been an educational loan which was made or guaranteed by a governmental unit, and which first became due more than five years before the date the bankruptcy petition was filed.

The parties in the within case agree that the loan or loans at issue were educational and were guaranteed by a governmental unit. The central dispute between the parties is whether the loan first became due more than five years before the defendant's bankruptcy filing. The defendant asserts that the "due date" refers to the date upon which the original loans—which ultimately were consolidated—were first due. The Government, on the other hand, contends that the consolidation loan is the loan to which the section refers and that loan first became due less than five years before defendant filed for bankruptcy.

A trilogy of cases from the Bankruptcy Court for the Eastern District of Virginia supports defendant's argument that the first due date of the *original* loans is the governing date for the purposes of Section 523(a)(8)(A).[2] In the earliest of those three decisions, *In re Brown*, 4 B.R. 745 (Bankr. E.D.Va.1980), Judge Bonney stressed that the text of "section 523(a)(8)(A)" only excepts from discharge those loans which *first* became due within five years before the date of the filing of the petition in bankruptcy and that "[w]hen the loans first became due is simply a question of fact to be determined from the promissory notes signed pursuant to the student loan agreement." *Id.* at 746 (emphasis in original). Judge Bonney concluded that the due date of a subsequent obligation which consol-

idated the earlier loans is irrelevant, reasoning:

Were it otherwise the student loan in issue (and all similar student loans) would never be discharged. Simply put, if default on the note to Mountain Trust Bank were held to be the first date on which the obligation became due, it would be five years before that obligation could be discharged in bankruptcy. Were this interpretation to obtain the student loan in question would be potentially nondischargeable for up to fifteen years, ten years being the term of the note plus the additional five years provided by the code. This is in contradistinction to the plain language of the statute and the clear intent of Congress.

*Id.* In *Brown* the creditor under the consolidated note was the same entity as under each of the original notes. Herein, the creditor under the consolidated note is a different entity than the lender in the four original notes executed by McGrath.

In the two later cases in the trilogy, the loans at issue were not student loans and therefore did not fall within the ambit of Section 523(a)(8). However, as an alternative basis for their rulings, the courts in each instance cited to *Brown* with approval and as holding that in cases in which a party either refinances or consolidates an earlier student loan, the first due date of the original loan or loans, rather than that of the refinanced or consolidated loan, is the governing date for Section 523(a)(8)(A) purposes.

In *In re McKinney*, 120 B.R. 416 (Bankr. N.D.Ohio 1990), *rev'd*, No. 1:90CV1946 (N.D.Ohio, May 12, 1992),[3] the debtor received three student loans from the First National Bank of Pennsylvania between 1979 and 1983. In 1988 the debtor applied for and received a consolidated loan from the Pennsylvania Higher Education Assistance Agency (PHEAA). PHEAA paid off

---

**1.** The five-year provision has subsequently been amended to require that the loan must first have become due *seven* years before the bankruptcy filing. *See* Pub.L. No. 101–647, Nov. 29, 1990.

**2.** *See In re Washington*, 41 B.R. 211 (Bankr. E.D.Va.1984); *In re Ziglar*, 19 B.R. 298 (Bankr.

E.D.Va.1982); *In re Brown*, 4 B.R. 745 (Bankr. E.D.Va.1980).

**3.** A copy of the slip opinion of the district court is included in the official court file in the within case.

First National Bank of Pennsylvania in October 1988. The debtor's first payment under the consolidated loan was due in October 1988. On May 4, 1989, the debtor filed a voluntary bankruptcy petition, and was granted a discharge in August 1989. Neither the debtor, nor PHEAA, nor PHEAA's loan servicer, sought a determination that the debt was dischargeable, each party taking the position that Section 523(a)(8) was applicable, but disagreeing as to the meaning of that section and as to which of them benefitted by its application.

The Bankruptcy Judge in *McKinney*, without citation to *Brown* and noting that the case before him "appears to be an issue of first impression," *id.* at 419–20, ruled that consolidation of a student loan under 20 U.S.C. § 1078–3 does not change the date the loan first became due; rather, the due date of the original loans governs. The Bankruptcy Court so ruled after commenting specifically that Section 1078 authorizes the consolidation of existing student loans under certain circumstances. The text of that statute provides that the loans made under the statute are considered to be "new loans" for the purposes of section 1074(a). Further, Section 1074(a) places limitations on loan amounts covered by federal insurance.

The debtor in *McKinney* successfully argued in the Bankruptcy Court that the "new loans" language related only to the budgetary concerns at issue in section 1074(a). PHEAA, on the other hand, argued that the "new loans" language indicated that the consolidation loan should be considered a "new loan" so that the date upon which the consolidated loan first becomes due would determine dischargeability under section 523(a)(8)(A). The Bankruptcy Court disagreed with that position, agreed with the debtor, and ruled that the existence of the consolidation loan was irrelevant for section 523(a)(8)(A) purposes. However, on appeal, the District Court rejected the Bankruptcy Court's said analysis. In its opinion in *McKinney*, the District Court cited with approval the opinion

of the Bankruptcy Court for the Central District of California in *In re Mumina Saburah*, 136 B.R. 246 (Bankr.C.D.Calif.1992).

In *Saburah*, the Bankruptcy Court considered the question whether an educational loan consolidating earlier educational loans provides the "first due date" for section 523 purposes or whether the first due date of the original loan governs.[4] That court ruled that the statutory period began to run on the due date of the consolidated loan. In *Saburah*, Bankruptcy Judge March, in a well-reasoned opinion, rejected the approach taken by the Bankruptcy Courts in the Eastern District of Virginia cases and by the Bankruptcy Court in *McKinney*. With respect to *Brown*, Judge March wrote:

> Under the reasoning of *Brown* a student could obtain a loan, avoid repayment while in school, wait until the first payment became due, obtain forbearances, at some point consolidate and drastically reduce the monthly payment, obtain forbearances on the consolidation loan, then once the § 523(a)(8)(A) period ended, file a bankruptcy petition. The effect is to benefit the student with money during school, then burden the taxpayer with funding such a loan which was hardly repaid. Such a result was not intended by Congress.

*Id.* at 251.

As does the Government in the within case, the Government in *Saburah* contended that the language of the statute authorizing the consolidation identifies the loans as "new" and therefore operates to change the starting date referred to in section 523. However, the court in *Saburah*, noting that argument, observed, "though these statutes may inferentially support the government's position, they are weak and certainly not conclusive authority." *Id.* Nevertheless, in *Saburah* the court concluded:

> whether the five year or seven year limit is involved.

---

**4.** In *Saburah* the amended statute which increased the time limit to seven years, was applicable. The analysis, however, is the same

The words "such loan" [in the section] refer to the loan which created the debt sought to be discharged. The loan which created the debt which Debtor seeks to have discharged is the New Loan [consolidated loan], not the Original Loan.... The date that is relevant is the date on which the loan creat[ing] the debt sought to be discharged first became due.

... [T]he New Loan is a separate loan, not a continuation of the Original Loans. The New Loan was made by Sallie Mae, not by any of the Original Lenders. The New Loan contains terms which differ from the Original Notes. If Debtor and Sallie Mae intended for terms of the Original Notes to continue, then Sallie Mae could have accepted an assignment of the Original Notes. This did not occur. Instead, Debtor executed the New Note.

*Id.* at 252.

As noted *supra,* the decision of the Bankruptcy Court in *McKinney* was reversed on appeal by the United States District Court for the Northern District of Ohio, Eastern Division. *See In re McKinney,* No. 1:90CV1946, 1992 WL 265992 (N.D.Ohio, May 12, 1992). In that appeal, Judge Matia reached the same conclusion as Judge March in *Saburah:*

The words "such loan" refer to the loan which created the debt sought to be discharged. There is only one loan and one debt in existence. The old, original loans were paid off. The old creditors are no longer involved. There is a new creditor, a new agreement with new terms. There is only a new loan, the consolidation loan.

*Id.,* slip op. at 5–6.[5] *See also In re Martin,* 137 B.R. 770 (Bankr.W.D.Mo.1992) (consolidation loan—not the original notes which had been paid off—was the loan to which the language of section 523(a)(8)(A) must be applied).

### IV.

As in *Saburah,* defendant's consolidation loan was made by Sallie Mae and the creditors associated with the earlier educational loans were paid off at the time of the consolidation loan. In addition, the payment terms provided to defendant were more generous than those of the earlier loans. Herein defendant seeks only to have the consolidation loan discharged noting that the earlier loans no longer exist.

As the courts in *Saburah, Martin,* and—on appeal—in *McKinney,* have concluded, the applicable statutory language refers to the educational loan which a bankruptcy debtor seeks to have discharged. The words "first became due" refers to that particular loan, not any earlier loan that has been paid off.[6] Thus, because the first installment with respect to the consolidation loan became due on July 1, 1983 and defendant filed his bankruptcy petition on May 19, 1987, only four years had elapsed since the consolidation loan first became due. Accordingly, that loan was nondischargeable in bankruptcy.

### V.

Defendant, McGrath, the debtor, seeks relief not only under section 523(a)(8)(A), but also under section 523(a)(8)(B). The latter establishes an "undue hardship" basis for discharge of in-

---

5. The defendant, in a memorandum filed in this case, referred to *In re McKinney,* 120 B.R. 416 (Bankr.N.D.Ohio 1990), observing that the *McKinney* case is "factually indistinguishable from the instant case and should therefore be controlling in its result." Defendant's Response to Government's Reply, at 4.

   However, in his most recent communication to this Court, defendant now takes the position that "the May 12, 1992 case [*i.e.,* the District Court's reversal of the Bankruptcy Court in *McKinney*] referred to by [counsel for the Government] relies on the Higher Education Act of 1986. [Defendant's] consolidation loan was granted in 1983 pursuant to the Higher Edu-

cation Act of 1965. Therefore, the ruling in [the May 12, 1992] case has no effect on *United States v. McGrath.*" Letter dated June 15, 1992.

   In any event, in the view of this Court, the language of § 523(a)(8)(A) requires in this appeal the result reached in *Saburah* and in *McKinney* on appeal and not the result reached by the Bankruptcy Court in *McKinney* and several other cases including *Brown.*

6. It is well settled, and the parties in the within case do not appear to challenge, that a student loan for purposes of 11 U.S.C. § 523(a)(8), first becomes due when the first installment is due. *See In re Nunn,* 788 F.2d 617, 619 (9th Cir.1986).

debtedness such as that incurred by McGrath. Defendant does not dispute that he did not seek, in the bankruptcy proceeding, a discharge on the basis of undue hardship. Rather, he asserts that the burden was on the Government, because the Government had notice of the bankruptcy filing, specifically to challenge the dischargeability of the consolidation loan in that proceeding. In that regard, the Bankruptcy Court in *In re Washington*, 41 B.R. 211 (Bankr.E.D.Va.1984), stated that section 523(a)(8) is "self-executing which means simply that educational loans are presumed to be not discharged in bankruptcy unless an affirmative act is taken to seek determination of the dischargeability of the debt." *Id.* at 213–14. This Court agrees.

Likewise, in *United States v. Bradburn*, 75 B.R. 108 (S.D.Ind.1987), the District Court observed that the precursor statute to section 523(a)(8) "was intended to be self-executing, and the Government was not required to file a complaint to determine the nondischargeability of the student loan debt." *Id.* at 110 (citing S.Rep. No. 95–989, 95th Cong., 2d Sess. 79, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5864, 5685, which contains the legislative history of section 523(a)(8)). *See also In re McKinney*, 120 B.R. 416, 419 (Bankr. N.D.Ohio 1990), *rev'd*, No. 1:90CV1946 (N.D.Ohio May 12, 1992). ("The provisions of 11 U.S.C. § 523(a)(8) are self-executing and, as such, do not require a complaint to be filed to determine dischargeability.")

In *In re Griffin*, 108 B.R. 717 (Bankr. W.D.Mo.1989), however, the court held that a debt for a student loan which became due more than five years prior to the filing of the bankruptcy petition was automatically discharged when the date upon which the loan first became due was more than five years before the bankruptcy petition was filed. In *Griffin*, the note itself facially revealed that fact. Even if *Griffin* is contrary to the views stated in *Bradburn*, *McKinney* and *Washington*, and even if this Court adopts the *Griffin* approach, it is not helpful to McGrath insofar as the section 523(a)(8)(B) "undue hardship" ground is concerned because, in *Griffin*,

the Bankruptcy Court clearly indicated that where that latter type of basis for discharge is involved, the debtor has the burden of going forward. In this case, the debt, for the reasons set forth in Part III of this opinion, became due less than five years prior to the date upon which the bankruptcy petition was filed, and McGrath did not, by pleading, proffer, or otherwise, seek discharge on the grounds of undue hardship. In effect, section 523(a)(8)(B) provides an affirmative defense, which a debtor must assert if he relies upon it. *See* 2 Norton, Bankr.L. & Prac. §§ 27.38, at 66 (1991).

For the reasons set forth in this opinion, this Court reaffirms its earlier judgment entered in favor of the Government in this case. Defendant's Motion to Vacate is therefore denied.