**In re Mary Marshall COBB.**

**Mary Marshall COBB, Plaintiff,**

v.

**UNITED STUDENT AID FUNDS, INC., Defendant.**

**Bankruptcy No. 95–23483.**
**Adv. No. 95–2185.**

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

May 9, 1996.

Steven L. Brown, Norfolk, VA, for Debtor/Plaintiff.

David A. Greer, Norfolk, VA, for Defendant.

MEMORANDUM OPINION AND ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This matter is before the Court on the Complaint to Determine Dischargeability filed by Mary Marshall Cobb ("debtor") whereby she seeks to have a student loan declared dischargeable pursuant to 11 U.S.C. § 523(a)(8)(A). The Complaint named Arizona Educational Loan Marketing Corporation ("AELMC") as defendant. By Order entered on December 22, 1996. United Student Aid Funds, Inc. ("USAF"), as successor in interest to AELMC, was granted leave to respond.[1] By agreement of the parties, the issue was submitted on briefs to the Court.

FACTUAL BACKGROUND

The essential facts of this case are not disputed by the parties in any material fashion. The facts provided to the Court are somewhat sketchy but it appears that the debtor originally obtained an initial student loan sometime in 1981 and the first payment on the loan became due no later than in 1987. There were no suspensions of payments or deferments requested or granted. On October 22, 1994 the original loan was consolidated with AELMC becoming the new lender. This consolidated loan was guaranteed by the defendant, USAF, which is now appearing in place of AELMC.[2] The first payment due under this consolidated loan became due on February 3, 1995. The Chapter 7 bankruptcy petition was filed on July 10, 1995.

CONCLUSIONS OF LAW

The sole issue before the Court is exactly when does the seven year period used to determine dischargeability under 11 U.S.C. § 523(a)(8)(A) begin to run. If the time period to establish dischargeability begins upon the date that the original loan first became

due, without regard to the later consolidation of the initial loan with another loan, then the debt owed to USAF is clearly dischargeable. On the other hand, the debt to USAF is excepted from discharge if the Court determines that the time period begins to run upon the date that the consolidated loan first became due.

11 U.S.C. § 523(a)(8)(A) of the bankruptcy code provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due before more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition

The number of reported cases on this issue is sparse and there is a split of authority. The majority of courts have held that the seven year period begins anew upon the date that a consolidated loan first becomes due. See *Hiatt v. Indiana State Student Assistance Comm.*, 36 F.3d 21 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1109, 130 L.Ed.2d 1074 (1995); *United States v. McGrath*, 143 B.R. 820 (D.Md.1992) *aff'd* 8 F.3d 821 (4th Cir.1993) (table); *In re Hesselgrave*, 177 B.R. 681 (Bankr.D.Or.1995); *In re Menendez*, 151 B.R. 972 (Bankr.M.D.Fla. 1993); *In re Martin*, 137 B.R. 770 (Bankr. W.D.Mo.1992); *In re Saburah*, 136 B.R. 246 (Bankr.C.D.Cal.1992). The only · decision squarely on ·point that holds that the date the original loan first became due is the proper date to consider, regardless of a subsequent

---

1. The granting to USAF of leave to respond to the complaint was objected to by the debtor. The complaint named only AELMC which never filed a responsive pleading. The debtor has contended that USAF knew or should have known of the complaint in sufficient time to file a timely response.

2. When this instant bankruptcy was filed, USAF reimbursed AELMC and in return was assigned the claim of AELMC against the debtor.

loan consolidation, is the decision of this Court in *In re Brown,* 4 B.R. 745 (Bankr. E.D.Va.1980).[3] Two other cases from this district. *In re Washington,* 41 B.R. 211 (Bankr.E.D.Va.1984) and *In re Ziglar,* 19 B.R. 298 (Bankr.E.D.Va.1982), follow the holding of *In re Brown.*

■ We begin our analysis with the exact wording of the statute. "Courts should look beyond the plain meaning of a statute only in those rare instances in which there is a clearly expressed legislative intent to the contrary, ... in which a literal application of the statute would thwart its obvious purpose." *In re Gibson,* 184 B.R. 716, 719 (E.D.Va.1995) (district court reversed bankruptcy court finding that the automatic stay was not an applicable suspension period for purposes of section 523(a)(8)(A)) (quoting *In re Maxway Corp.,* 27 F.3d 980 (4th Cir. 1994)). Section 523(a)(8)(A) provides that "such loan" may be discharged if it became due seven years prior to the filing of the bankruptcy petition. The question is whether "such loan" means the original loan or the consolidated loan. As the court in *Saburah* stated:

> The words "such loan" refer to the loan which created the debt sought to be discharged. The loan which created the debt which Debtor seeks to have discharged is the New Loan, not the Original Loans. Thus, pursuant to the plain language of Section 523(a)(8)(A) the debt on the New Loan is only dischargeable if the New Loan, i.e. the consolidation loan, first became due more than seven years before the date of filing of the Current Chapter 7. Based on the plain language of Section 523(a)(8)(A), the date that the Original Loans first became due is irrelevant. The date that is relevant is the date on which the loan created the debt sought to be discharged first became due.

*In re Saburah,* 136 B.R. at 252. The *Saburah* court further reasoned that if Congress had intended for only the date of the original loans to be used in calculating when the seven year period begins, then it could have or should have put in language to that effect. *Id.* at 252.

■ In the case before this Court, an entirely new lender is involved and the consolidated loan is not a continuation of the original loan, but rather a completely new loan. *Saburah,* 136 B.R. at 252. Most importantly, the debt sought to be discharged is the consolidated loan and the original loans no longer exist. *Id.* at 252. Entering into a new loan obligation and paying off the earlier notes serves to extinguish the dates that the old loans first became due for the purposes of section 523(a)(8)(A). *Martin,* 137 B.R. at 774.

The leading decision in this district is *In re Brown,* 4 B.R. 745 (Bankr.E.D.Va.1980) which involved a debtor who consolidated his student loans with the same lender who made the original loans. The Court looked at the statutory language of section 523(a)(8)(A) that provides that only loans first becoming due within five years before the filing of the petition are excepted from discharge.[4] *Id.* at 746. The Court stated that "[w]hen the loans first became due is simply a question of fact to be determined from the promissory notes signed pursuant to the student loan agreement". *Id.* at 746. The Court apparently felt that if it were to hold otherwise, student loans would never be discharged. However, in reaching this conclusion, the Court appears to have been looking at the language of the consolidation note that provided that the entire balance became due when an installment payment was not made. *Id.* at 746. Using that as a basis, the Court apparently felt that if default on the note was considered to be the first date upon which the obligation was due, then it would

**3.** The bankruptcy court in *In re McKinney,* 120 B.R. 416 (Bankr.N.D.Ohio 1990), without reference to the decision in *Brown,* held that the date the original loan first became due, not the consolidated loan, was the proper measure of the dischargeability period. However, the bankruptcy court was reversed by the district court in an unpublished decision. *In re McKinney,* No.

1:90CV1946, 1992 WL 265992 (N.D.Ohio May 12, 1992).

**4.** In the Crime Control Act of 1990, Congress amended section 523(a)(8)(A) to extend the period of nondischargeability for student loans from five to seven years.

five years under the Code and up to ten years under the terms of the note until the debt could be discharged. *Id.* at 746.

Several factors lead this Court to the conclusion that the holding in *Brown* should be reconsidered. First of all, the decision in *Brown* appears to have concentrated on the "first became due" language of the statute. This Court agrees with the majority of other courts that the inquiry is properly focused on the meaning of "such loan". The statutory language refers to the loan that the debtor wishes to discharge with the words "first became due" referring to that loan, not an earlier loan that no longer exists. *McGrath*, 143 B.R. at 824.

We therefore agree with the majority approach that considering the date the consolidated loan first became due comports with the plain meaning of the statute.[5] The legislative history indicates that Congress viewed section 523(a)(8) as contributing to the continued credibility and stability of the student loan program which would in turn ensure its viability for future generations of students. S.Rep. No. 230, 96th Cong., 1st Sess. (1979), *reprinted in* 1979 U.S.C.C.A.N. 936, 938. We find nothing in the legislative history that would contradict or subvert the plain wording of the statute. It is also clear that public policy concerns weigh heavily ·in favor of the repayment of student loans which is illustrated by Congress extending the time period under section 523(a)(8)(A) to seven years. *Saburah*, 136 B.R. at 252.

The interpretation we today adopt furthers congressional policy by ensuring that the consolidation loan, which is in essence a second government guaranteed student loan, is collectible for at least seven years before it is dischargeable. *In re Hiatt*, 36 F.3d at 24. Restarting the period for nondischargeability does touch upon the concern expressed in *Brown* that a loan may not be discharged for a very long time. However, this extension of the time period does not conflict with the Congressional intent to curtail abuse and promote the viability of the student loan program. *In re Hiatt*, 36 F.3d at 24.

We also note that *Brown* was decided in 1980 and was the first reported decision on the issue of the proper date to consider in regard to the dischargeability of consolidated loans. Since that time, the issue has been further explored and this Court now has the luxury of being able to review the reasoning of various court decisions. Also, the *McGrath* decision from the district court in Maryland was affirmed by the Fourth Circuit. *McGrath* dealt with the very issue that now confronts this Court. Unfortunately, the decision affirming *McGrath* is unpublished and does not set forth the reasoning of the Court of Appeals. We believe that this is some indication, although not conclusive, that the Fourth Circuit would adopt the majority approach were it faced with this issue again.

Counsel for the debtor cites two other cases from the Eastern District of Virginia that touch upon the issue before us but are not directly on point. In *In re Ziglar*, 19 B.R. 298 (Bankr.E.D.Va.1982), the court found that a note executed in return for the lenders forebearing on enforcing judgements resulting from the original loan was not in exchange for a student loan and therefore was dischargeable. *Id.* at 300. Alternatively, the court relied on *Brown* and found that the note was a consolidation of an earlier loan and therefore the due date of the earlier loan controlled and the debt was dischargea-

---

**5.** The statute creating the consolidated loan program, 20 U.S.C. § 1078–3, provides that loans made under that section are to be considered new loans. USAF argues that this language supports its position that "such loan" refers to the consolidated loan, i.e. an entirely new loan. We decline to rest our decision on the language of 20 U.S.C. § 1078–3(e) and given our analysis of 11 U.S.C. § 523(a)(A)(8), we see no need to decide upon the merits of this particular contention. It should be noted that courts have conflicting views on the strength of authority that section 1078–3(e) provides on this issue. *Compare In re Saburah*, 136 B.R. at 251 (although 20 U.S.C. sections 1078–3 and 1074 may provide inferential support to the lender's position, those sections do not reference 11 U.S.C. § 523(a)(8)(A) and therefore are weak and certainly not conclusive authority) *with In re McKinney*, No. 1:90CV1946, 1992 WL 265992 at *2–3 (N.D.Ohio May 12, 1992) (*McKinney II* ) (section 1078–3 provision that consolidation loan is a "new loan" does not limit the treatment of consolidation loans as new loans to budgetary matters only and therefore is relevant to the issue of nondischargeability under section 523(a)(8)(A)), *rev'g In re McKinney*, 120 B.R. 416 (Bankr.N.D.Ohio 1990) (*McKinney I* ).

ble. *Id.* at 300. The last of the trilogy of cases from this district is *In re Washington,* 41 B.R. 211 (Bankr.E.D.Va.1984) which held that the exception to discharge for student loans did not apply to co-makers who were not student borrowers. *Id.* at 214. The court, relying on *Brown,* went on to find that the debt would be dischargeable to the co-makers even if the statute applied to them due to the fact that the original loan was due over five years prior to the filing of the petition. *Id.* at 215. The Court in *Ziglar* and *Washington* did not undertake an analysis of the issue before this Court, but rather relied upon *Brown* as being the settled law in the Eastern District of Virginia and even then used that as an alternative holding. We therefore do not find *Ziglar* and *Washington* to be instructive on this particular issue.

Counsel for the debtor correctly points out that the first payment due on the original loan was more than seven years prior to the bankruptcy filing and therefore was fully dischargeable at that time. Debtor further asserts that the consolidated loan should not have a status superior to that of the original loan and therefore should be dischargeable. Courts faced with a similar factual situation have still found the act of consolidation as starting anew the seven year period. See *In re Menendez,* 151 B.R. 972 (Bankr.M.D.Fla. 1993); *In re Hesselgrave,* 177 B.R. 681 (Bankr.D.Or.1995). It would be inequitable to allow the debtor to do away with the troublesome features of the original loans and accept the benefits of consolidation and then still be able to use the favorable repayment dates for bankruptcy purposes. *Martin,* 137 B.R. at 775.

The debtor also argues that AELMC and USAF voluntarily agreed to the consolidation loan and were aware of all the details of the loan and therefore assumed the risk of dischargeability because the loan was at that time already dischargeable in bankruptcy. We find no authority that would support this burden shifting and it would be contrary to Congressional intent. The fact remains that the debtor was in control of the decision whether to consolidate or not. *Saburah,* 136 B.R. at 252.

Counsel for the debtor also contends that the only party receiving any benefit from the consolidation loan was the original lender who had its loan paid off. Because the debtor did not return to school following the consolidation, the debtor appears to be implying that the loan was not for an educational purpose, but fails to cite any authority for this proposition. This argument misses the mark for a couple of reasons. First of all, it appears that the act of consolidating the loans benefitted the debtor by changing the payment terms in some fashion.[6] Secondly, the original loan was admittedly for educational purposes. The consolidation loan served to pay off and alter the terms of the initial education loan and thus created a new obligation relative to the reason for the debt. The essential purpose of the consolidation was the repayment and restructuring of a debt incurred to pay the costs of higher education.

### CONCLUSION

Based upon the foregoing reasoning, this Court concludes that the debt owed by Mary Marshall Cobb to United Student Aid Funds, Inc. is not dischargeable under 11 U.S.C. § 523(a)(8)(A).

It is so **ORDERED.**

---

6. The Court has not been provided with facts sufficient to determine exactly in what way the terms of the original loans were changed by the consolidated loan. However, it would strain common sense to think that the debtor chose to consolidate her loans without there being some advantage inuring to her as a result.