In re Mumina SABURAH, a.k.a. Colleen Powers–Imani, Debtor.

Mumina SABURAH, a.k.a. Colleen Powers–Imani, Plaintiff,

v.

UNITED STATES DEPARTMENT OF EDUCATION, Respondent.

Bankruptcy No. LA 91–77391 NKM.
Adv. No. LA 91–05907 NKM.

United States Bankruptcy Court, C.D. California.

Jan. 3, 1992.

---

Steven Pinsker, Michaelson, Susi & Michaelson, Santa Barbara, Cal., for plaintiff, debtor.

David Y. Farmer, Farmer & Ready, San Luis Obispo, Cal., trustee.

Hugh W. Blanchard, Asst. U.S. Atty., Los Angeles, Cal., for respondent.

## OPINION RE MOTION FOR SUMMARY JUDGMENT

KATHLEEN P. MARCH, Bankruptcy Judge.

### I. FACTUAL AND PROCEDURAL HISTORY

Prior to October 1, 1981, Mumina Saburah, a.k.a. Colleen Powers–Imani ("Plaintiff" and "Debtor") executed a total of four promissory notes (the "Original Notes") in favor of four different lenders [1] (the "Original Lenders") in consideration for the Original Lenders loaning approximately $7,124.06 (the "Original Loans") to Debtor. There is no dispute that the Original Loans were made for the purpose of financing Debtor's college education. The first payment on the Original Loans came due on October 1, 1981.

On October 5, 1983, Debtor executed a promissory note (the "New Note") in favor of the Student Loan Marketing Association ("Sallie Mae"). The New Note was executed in consideration for Sallie Mae paying off the Original Lenders and consolidating the amount still due on the Original Loans. Including interest payments, the original balance on the New Note was $10,-577.37 (the "New Loan"). The terms of the New Note established that the payment on the New Note was guaranteed by the United States Department of Education ("Defendant" and "DOE").

On October 10, 1984, Debtor executed a document requesting a forbearance of payment on the New Note for the six payments due on August 15, 1984, September

1. The New Note identifies the institutions being paid as the University of Portland, First Interstate Bank of Oregon, Knights of Columbus, and SLSC/HEMAR. It is unclear whether SLSC/HEMAR was an actual lender or was servicing a loan for the actual lender.

15, 1984, October 15, 1984, November 5, 1984, December 15, 1984, and January 15, 1985 (the "Forbearance Request"). Sallie Mae granted the Forbearance Request.[2]

On January 18, 1985, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code (the "Prior Chapter 7"). Debtor received a discharge in the Prior Chapter 7. No evidence was submitted as to the district in which the Prior Chapter 7 was filed. No evidence was submitted as to the date Debtor received a discharge in the Prior Chapter 7. No evidence was submitted as to the date upon which the Prior Chapter 7 case was closed.

On March 22, 1990, the DOE held a hearing to determine why Debtor was seriously delinquent in making payments on the New Note. At that time Debtor asserted that she had received a discharge of the debt owed on the New Loan in the Prior Chapter 7. The debt on the New Loan was in fact not discharged in the Prior Chapter 7.[3]

On May 28, 1991, Debtor filed her current petition for relief under Chapter 7 of the Bankruptcy Code (the "Current Chapter 7"). The only creditor listed on the schedules is the DOE. The amount of the debt is listed as $10,000.00.

On July 18, 1991, Debtor filed the instant adversary proceeding against the DOE to determine the dischargeability of her $10,000.00 educational debt evidenced by the New Note. In her adversary proceeding complaint, Debtor alleges that the debt due on the New Note is dischargeable under 11 U.S.C. Sections 523(a)(8)(A) and 523(a)(8)(B). Section 523(a)(8) provides:

"A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents."

Since (A) and (B) are worded in the alternative ("or"), Debtor's obligation under the New Note is dischargeable under Section 523(a)(8), if Debtor proves that either § 523(a)(8)(A) or § 523(a)(8)(B) applies.

On October 17, 1991, Debtor filed the instant Motion for Summary Judgment ("Motion") seeking to hold the debt due on the New Note discharged under both § 523(a)(8)(A) and § 523(a)(8)(B). The Mo-

**2.** An unauthenticated document attached to the Opposition purports to be an assignment on July 15, 1985 from Sallie Mae to Unipac Service Corporation ("Unipac") of Sallie Mae's right to receive payment under the New Note. The alleged assignment specifically stated that the Note was still insured by the United States of America. In her Motion and Reply, Debtor is uncertain whether it was the DOE or Unipac which granted the Forbearance Request. It appears that the DOE was still the owner of the Note at the time that the Forbearance Request was granted. This uncertainty, however, is not dispositive of the Motion.

**3.** At the time Debtor filed the Prior Chapter 7, the law governing dischargeability of student loan debt differed from the present law. 11 U.S.C. § 523(a)(8)(A) used to provide for discharge of student loan debt if the first payment on the debt became due more than five years before the petition date, excluding applicable period for suspension of repayment. The first payment on the Original Loans came due October 1, 1981, three years, three months and fourteen days before the date the Prior Chapter 7 was filed. The first payment on the New Loan came due on December 15, 1983, one year, one month and three days before the Prior Chapter 7 was filed. Neither of these time periods is sufficient to render the debt discharged, even without adding the six month forbearance period or reaching a determination of which date is considered the first date that the student loan became due. Furthermore, there is no evidence that Plaintiff filed a complaint to determine dischargeability of debt under § 523(a)(8)(B) in the Prior Chapter 7. Therefore, the obligation on the New Loan was not discharged in the Prior Chapter 7.

tion is supported by Debtor's declaration and a Memorandum of Points and Authorities (the "Supporting Memorandum"). On October 28, 1991, the DOE filed a Memorandum in Opposition to Motion for Summary Judgment (the "Opposition"). On November 5, Plaintiff filed a Reply Memorandum in Support of Motion for Summary Judgment (the "Reply"). A hearing (the "Hearing") on the Motion was held on November 7, 1991.

## II. LEGAL STANDARD

A motion for summary judgment is governed by Federal Rule of Civil Procedure 56 ("FRCP 56")[4] pursuant to Federal Rule of Bankruptcy Procedure 7056.[5] To obtain summary judgment holding the loan discharged, Debtor, as movant, has the burden of proving that there is no genuine issue as to any material fact relevant to the motion and that Debtor is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). For the reasons discussed herein, movant has failed to meet this burden of proof.

## III. THE PARTIES' POSITIONS

A. *Debtor's Position*

Debtor contends that:

1. As a matter of law, consolidating the Original Loans did not change

the date that the first payment became due for purposes of 11 U.S.C. Section 523(a)(8)(A).

2. The date that either the Original Loans or the New Loan first became due was October 1, 1981.

3. The Forbearance Request was for five, not six months.

4. The seven year period of 11 U.S.C. Section 523(a)(8)(A) ended on March 1, 1989.

5. Even if the first date that the New Loan became due was December 15, 1983, the seven year period of 11 U.S.C. Section 523(a)(8)(A) ended on May 15, 1991.

6. Debtor is precluded from obtaining employment outside of her home, because she must care for her five year old son suffering from cystic fibrosis, and her one year old daughter.

7. If Debtor became employed outside of her home, any income obtained from such employment would be offset by the expense of child care.

8. Debtor's son's medical condition gives rise to expenses which are not covered by Medicare.

9. Expenses of Debtor's immediate family are $2,238 per month.

10. Income from Debtor's spouse is $1,950 per month.

11. Debtor's spouse has no prospect of increased income from his current form of employment.

**4.** FRCP 56(c) provides in part: "... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

FRCP 56(e) provides: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in affidavit shall be attached thereto or served therewith. The court may

permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

**5.** FRBP 7056 provides that FRCP 56 applies in adversary proceedings under title 11.

### B. *DOE's Position*

The Department of Education contends that:

1. As a matter of law, under 11 U.S.C. Section 523(a)(8)(A) and 20 U.S.C. Sections 1078–3(d) and 1087–2(O), a consolidation loan is a new loan for purposes of determining the date upon which the loan first became due.

2. For purposes of 11 U.S.C. Section 523(a)(8)(A), the New Loan first became due on December 15, 1983.

3. The Forbearance Request was for six months, and six months forbearance was granted.

4. The seven year period of 11 U.S.C. Section 523(a)(8)(A) ended on June 15, 1991, after Debtor filed the Current Chapter 7.

5. Debtor has not provided evidence to support a finding of undue hardship.

6. As a matter of law, a showing of present inability to pay is not sufficient to support a finding of undue hardship under 11 U.S.C. Section 523(a)(8)(A).

7. Debtor has not established either a present or future inability to make student loan payments.

8. The sole purpose of the Current Chapter 7 is to discharge Debtor's obligation under the New Loan.

### IV. ISSUES

#### A. *Issues re 11 U.S.C. Section 523(a)(8)(A)*

There are two issues under Section 523(a)(8)(A) relating to the question of whether the loan sought to be discharged first came due more than seven years (exclusive of any applicable suspension of the repayment period) before the date of filing of the petition. These are:

1. ON WHAT DATE DID THE SEVEN YEAR PERIOD BEGIN?

   Whether as a matter of law, under 11 U.S.C. Section 523(a)(8)(A), executing a promissory note in favor of a new lender to consolidate and pay off prior loans made by different lenders creates a new date upon which the consolidation loan first becomes due; or whether the date that the consolidation loan first becomes due is the date that payment on the *original* loans first becomes due.

2. WAS THERE AN APPLICABLE SUSPENSION PERIOD, AND IF SO, HOW LONG WAS THE APPLICABLE SUSPENSION PERIOD?

   a. Whether the Forbearance Request was for five or six months.

   b. Whether the forbearance actually granted was for five or six months.

   c. Whether as a matter of law, under 11 U.S.C. Section 523(a)(8)(A) the applicable suspension period includes the time period during which the automatic stay of 11 U.S.C. Section 362(a) (the "Stay") is in effect.

#### B. *Issues re 11 U.S.C. Section 523(a)(8)(B)*

There is one issue, with two sub-issues, relating to section 523(a)(8)(B):

1. WOULD NOT DISCHARGING THE NEW OBLIGATION CONSTITUTE UNDUE HARDSHIP TO DEBTOR AND DEBTOR'S DEPENDENTS?

   a. Whether Debtor's evidence supports a finding of a present inability to make payments on the New Loan.

   b. Whether Debtor's evidence supports a finding of a future inability to make payments on the New Loan.

### V. FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A. *Re issues re 11 U.S.C. Section 523(a)(8)(A)*

1. STARTING DATE OF THE SEVEN YEAR PERIOD

   The first issue is what date the seven year period starts to run from. This Court has been unable to find any reported case on point by the United States Supreme Court or the Ninth Circuit Court of Appeals as to whether the seven year period should be counted as running from the date that the Original Loans were first due or

the date the New Loan was first due (which is the loan debtor seeks to have discharged).[6]

Debtor cites *Washington v. Virginia State Education Assistance Authority (In re Washington)*, 41 B.R. 211 (Bankr. E.D.Va.1984) for her position that the New Loan did not change the starting date of the seven year period. The court in *In re Washington* held that the consolidation of loans did not create a new date for determining when the period under § 523(a)(8)(A) began. The sole reasoning used by the court in *In re Washington* was that its holding represented the law in the Eastern District of Virginia.

I disagree with the holding in *In re Washington* for three reasons. First, the Court in *In re Washington* relied on *Commonwealth of Virginia v. Ziglar (in re Ziglar)*, 19 B.R. 298 (Bankr.E.D.Va.1982). However, the court in *In re Ziglar* found that the loan was not an educational loan. Therefore, its holding is not relevant here.

Second, the court in *In re Washington* relied upon *Commonwealth of Virginia v. Brown (In re Brown)*, 4 B.R. 745 (Bankr. E.D.Va.1980). The court in *In re Brown* held that the event of consolidation does not move forward in time the starting date for the period under § 523(a)(8)(A). The reasoning used by the court in *In re Brown* was that in theory, an educational loan might never be dischargeable because continuous extensions would operate to extend the § 523(a)(8)(A) period. I find this reasoning unpersuasive. Under the reasoning of *Brown* a student could obtain a loan, avoid repayment while in school, wait until the first payment became due, obtain forbearances, at some point consolidate and drastically reduce the monthly payment, obtain forbearances on the consolidation loan, then once the § 523(a)(8)(A) period ended, file a bankruptcy petition. The effect is to benefit the student with money during school, then burden the taxpayer with funding such a loan which was hardly repaid. Such a result was not intended by Congress.

Third, as already noted, there is no such law in the Ninth Circuit or higher even suggesting such a result.

The DOE argues that 20 U.S.C. Sections 1078–3(d)[7] and 1074 operate to change the starting date of the period under 11 U.S.C. Section 523(a)(8)(A). While it is true that Section 1078–3(d) identifies the loans as new, the language of Sections 1078–3(d) and 1074 involve the ability of the federal government to insure a student loan. 20 U.S.C. Sections 1078–3(d) and 1074 do not reference 11 U.S.C. § 523(a)(8)(A). Thus, though these statutes may inferentially support the government's position, they are weak and certainly not conclusive authority.

Though not cited by either Debtor or DOE, there is one reported case on point, namely *In re McKinney*, 120 B.R. 416 (Bankr.N.D. Ohio 1990). In *In re McKinney*, the court held that consolidating student loans does not operate to extend the starting date under 11 U.S.C. Section 523(a)(8)(A). The rationale used by the court in *In re McKinney* is twofold. First, that 20 U.S.C. Sections 1078–3(d) and 1074 authorizing consolidation loans was not intended to affect dischargeability under 11 U.S.C. Section 523(a)(8)(A). 120 B.R. at 420. Second, that extending the starting date under Section 523(a)(8)(A) would "penalize the honest student borrower who cannot repay the loan when due." 120 B.R. at 420.

---

6. The leading Ninth Circuit case holding on 11 U.S.C. Section 523(a)(8)(A) is *Nunn v. State of Washington (In re Nunn)*, 788 F.2d 617 (9th Cir.1986). *Nunn* did not address the issues presented here. *Nunn* addressed whether the starting date of the period under § 523(a)(8)(A) is the date upon which the first payment on a note is due, or the date upon which each monthly payment is due. The court in *Nunn* held that the relevant date is the date upon which the first payment on a note became due.

7. 20 U.S.C. Section 1078–3(d) provides in part that:

"... Loans made under this section which are insured by the Secretary shall be considered to be new loans made to students for the purpose of section 1074(a) of this title." 20 U.S.C. Section 1074 is entitled Scope and Duration of Federal Loan Insurance Program.

I reject the reasoning of the Court in *McKinney*, for six reasons. First, Debtor's argument is contrary to the plain language of Section 523(a)(8)(A). Section 523(a)(8)(A) states that:

"a discharge ... does not discharge any individual debtor from *any debt* ... unless—(A) *such loan first became due* more seven years ... before the date of filing of the petition".

The words "such loan" refer to the loan which created the debt sought to be discharged. The loan which created the debt which Debtor seeks to have discharged is the New Loan, not the Original Loans. Thus, pursuant to the plain language of Section 523(a)(8)(A) the debt on the New Loan is only dischargeable if the New Loan, i.e. the consolidation loan, first became due more than seven years before the date of filing of the Current Chapter 7. Based on the plain language of Section 523(a)(8)(A), the date that the Original Loans first became due is irrelevant. The date that is relevant is the date on which the loan created the debt sought to be discharged first became due. If Congress had intended to use the date that earlier loans first became due as the start of the seven year period, then Congress could have and should have (either when originally drafting the 11 U.S.C. Section 523(a)(8)(A) or when amending the period from five to seven years) stated that such loan was dischargeable if "such loan or any earlier loan on the same subject" first became due more than seven years before the date of filing of the petition. Congress did not put such language in Section 523(a)(8)(A).

Second, the New Loan is a separate loan, not a continuation of the Original Loans. The New Loan was made by Sallie Mae, not by any of the Original Lenders. The New Note contains terms which differ from the Original Notes. If Debtor and Sallie Mae intended for terms of the Original Notes to continue, then Sallie Mae could have accepted an assignment of the Original Notes. This did not occur. Instead, Debtor executed the New Note.

Third, the debt that Debtor is attempting to discharge is the debt created by the New Loan, not the Original Loans. None of the Original Lenders are scheduled as creditors in the Current Chapter 7. In fact, obligations created by the Original Loans no longer exist, as those obligations were satisfied by Sallie Mae when Debtor obtained the New Loan. Therefore, the only loan remaining is the New Loan, and consequently the only debt which can be discharged is the debt created by the New Loan.

Fourth, Debtor was in control of the starting date under § 523(a)(8)(A). Debtor voluntarily requested and accepted the New Loan. If Debtor desired to keep the starting date under § 523(a)(8)(A) as October 1, 1981, Debtor could have chosen to not obtain a consolidation loan.

Fifth, there is a strong public policy in favor of repaying student loans.[8] This is further evidenced by Congress recently extending the period under § 523(a)(8)(A) from five to seven years.[9] The position urged by Debtor is contrary to that public policy.

Sixth, even if I did agree with the second rationale used by the court in *In re McKinney*, (i.e. that Congress did not intend to penalize honest student borrowers who could not repay their loans when due) debtor has not established that she is an honest debtor who cannot afford to repay her loan when due. In fact, Debtor's repayment history evidences the contrary.

---

**8.** The legislative history to § 523(a)(8)(A) provides that:

"The committee believes that the long range effect of this bill will be to maintain the credibility and stability of the student loan program and assure that future generations of students will have a viable loan program available to them." S.Rep. No. 230; 96th Cong., 1st Sess.; H.R. 2807.

**9.** Prior to November 15, 1990, Section 523(a)(8)(A) provided for the dischargeability of student loans if five years had elapsed since the first payment became due. Pursuant to the Criminal Victims Act of 1990 and the Crime Control Act of 1990, the period was extended from five to seven years effective November 15, 1990.

Debtor's repayment history establishes that prior to executing the New Note, Debtor only made a few payments on the Original Loans. After executing the New Note, Debtor made eight payments and then requested and received the six months forbearance. Once the forebearance period expired, Debtor immediately filed the Prior Chapter 7. At the Hearing, Debtor's current counsel admitted that Debtor filed the Prior Chapter 7 for the purpose of discharging the student loan debt, but that Debtor's counsel in the Prior Chapter 7 miscalculated the period under § 523(a)(8)(A). In the more than six year period between the Prior Chapter 7 and the Current Chapter 7, Debtor was scheduled to make $4,810.76 in payments.[10] Yet, during this lengthy period, the balance on the New Loan was only reduced by $112.27.[11]

The evidence presented on this motion does not establish that Debtor is an honest debtor who cannot repay the loan when it became due. Rather, after Debtor's failed attempt in the Prior Chapter 7 to discharge the debt created by the New Loan, Debtor waited until when she thought she was eligible to obtain another discharge,[12] then immediately filed the Current Chapter 7 without ever having made more than nominal payments on the New Loan.

Based upon all of the foregoing, I conclude as a matter of law that the seven year period under § 523(a)(8)(A) commenced on December 15, 1983, the date that the New Loan first bacame due.

## 2. LENGTH OF THE APPLICABLE SUSPENSION PERIOD

The next issue is what length of forebearance was requested by and granted to Debtor.

### a. Length of the Forbearance Request

■ The specific language of the Forbearance Request establishes that Debtor requested the forbearance for payments *"due from August 15, 1984 to January 15, 1985."* August through January is six months (and 6 payments—one payment due on the 15th of each month.) The six months and payments are August 15, 1984, September 15, 1984, October 15, 1984, November 15, 1984, December 15, 1984, and January 15, 1985.

It appears that Debtor is arguing that she did not intend to include the payment due on August 15, 1984 in the Forbearance Request. That position is only believable if the term *"from"* August 15, 1984 does not include the payment due on August 15, 1984. I do not find Debtor's assertion consistent with either what she requested or received. First, Debtor received a copy of the Forbearance Request after it was approved by the DOE. The Forbearance Re-

---

**10.** According to the New Note, the repayment schedule required Debtor to make the following payments:

24 payments at $ 55.56
24 payments at $ 68.51
24 payments at $ 84.48
24 payments at $104.17
23 payments at $128.45
 1 payment  at $117.74

Prior to filing the Prior Chapter 7, Debtor had made eight payments at $55.56. Therefore, to account for the period between the filing of the Prior Chapter 7 and the Current Chapter 7, Debtor would have to have made 76 payments [February 1985 through and including May 1991] less payments stayed from collection due to the imposition of the Stay in the Prior Chapter 7. This translates into:

16 payments at $ 55.56 =   $ 888.86
24 payments at $ 68.61 =   $1,644.24
24 payments at $ 84.48 =   $2,027.52
12 payments at $104.17 =   $1,250.04
                           $4,810.76

**11.** The original balance on the New Loan was $10,577.37. Subtracting eight payments at $55.56 per payment [$444.48], we arrive at a balance of $10,132.89. As of March 1990, the balance was $10,020.62, reflecting a reduction in the balance of $112.27.

**12.** 11 U.S.C. Section 727(a)(8) provides that: "The court shall grant the debtor a discharge, unless—
   (8) the debtor has been granted a discharge under this section ... in a case commenced within six years before the date of the filing of the petition;"
Debtor filed the Prior Chapter 7 on January 15, 1985. Therefore, Debtor was not eligible to obtain a discharge in a subsequent chapter 7 unless that case was filed after January 15, 1991. Debtor filed the Current Chapter 7 on May 28, 1991.

quest specifically states that the period of forbearance included the payment due on August 15, 1984. There is no evidence that Debtor disputed the period of forbearance. Rather, Debtor took advantage of the entire six month suspension of payments. Debtor did not make any of the six payments, and filed the Prior Chapter 7 shortly before the February 15, 1985 payment became due.

I therefore find and conclude that for purposes of 11 U.S.C. Section 523(a)(8)(A), the Forbearance Request counts for six months when calculating the applicable suspension period.

### b. Length of time that the Stay was in effect in the Prior Chapter 7

■ There is also an additional suspension period applicable here. Neither Debtor nor the DOE pointed out that during the Prior Chapter 7, the automatic stay of 11 U.S.C. Section 362(a) (the "Stay") operated to prohibit the DOE from taking any action to collect payments on the New Loan. None of the exceptions to the Stay found in 11 U.S.C. Section 362(b) apply to the DOE. Therefore, I conclude as a matter of law that the length of the time that the Stay was in effect in the Prior Chapter 7 is includable when calculating the applicable suspension period under Section 523(a)(8)(A).

11 U.S.C. Section 362(c) identifies six possible places in time when the Stay is no longer in effect. These six are:

a. the date of entry of an order granting relief from the Stay under Section 362(d);

b. the date that Stay is terminated under 362(e);

c. the date of entry of an order granting relief from the Stay under Section 362(f);

d. the date that the bankruptcy case is closed;

e. the date that the bankruptcy case is dismissed; or

f. the date of entry of an order granting or denying a discharge.

Debtor was granted a discharge in the Prior Chapter 7. No evidence was submitted as to the date that the discharge order was entered. There is also no evidence that an order granting relief from the Stay was entered prior to the order granting discharge.

I therefore find and conclude that the time period between the filing of the Prior Chapter 7 and the date of entry of the order granting discharge in the Prior Chapter 7 must be included when calculating the applicable suspension period of Section 523(a)(8)(A). From the evidence submitted, it is not possible to calculate the length of time that the Stay was in effect.

I therefore find that the applicable suspension period equals six months plus the time period in which the Stay was in effect in the Prior Chapter 7.

Based upon the foregoing, I find and conclude that the seven year period under § 523(a)(8)(A) commenced on December 15, 1983. Excluding the applicable extension period, the seven year period ended on December 15, 1990. Including the applicable suspension period, at least six months plus the Stay period must be added to December 15, 1990. The new end date under Section 523(a)(8)(A) is therefore at least June 15, 1991, plus the length of time between the date that the Prior Chapter 7 was filed and the date of entry of the order discharging Debtor in the Prior Chapter 7. Debtor filed before the seven years, as extended, expired.

### B. Re issues re 11 U.S.C. Section 523(a)(8)(B)

■ The two issues regarding Section 523(a)(8)(B) are Debtor's present and future inability to repay the note.

### 1. PRESENT INABILITY TO MAKE PAYMENTS ON THE NEW NOTE

The only evidence submitted in support of the Motion is Debtor's declaration. The statements in Debtor's declaration (the "Declaration") which are relevant to § 523(a)(8)(B) are as follows:

a. Debtor's five year old son suffers from cystic fibrosis.

b. MediCal pays for most, but not all, of his medical expenses.

c. Debtor claims she must spend considerable time caring for her son.

d. Debtor also has a one year old daughter living at home.

e. Debtor claims she is precluded from obtaining outside employment.

f. Debtor sees no foreseeable change in her current financial or family situation.

In the Supporting Memorandum, Debtor asserts that her family's monthly expenses are $2,238 per month. However, no itemization is given. Moreover, there are no statements in the Declaration on this point. I therefore find and conclude there remains a triable issue of fact regarding Debtor's expenses.

Similarly, Debtor asserts in the Supporting Memorandum that her husband earns $1,950 per month. Again, there are no statements in the Declaration on this point. Furthermore, neither the Declaration nor the Supporting Memorandum address whether there may be other sources of funds such as unearned income, inheritence, etc. available to make loan payments.

Additionally, no explanation and no evidence was submitted as to whether or not Debtor could free up some funds by budgeting or cutting down on nonessentials, and as to why certain expenses could not be eliminated. I therefore find and conclude that there remains a triable issue of fact regarding family income.

Moreover, insufficient evidence was submitted to establish that Debtor is precluded from obtaining employment outside her home. Although Debtor asserts in the Supporting Memorandum that any income earned by Debtor outside the home would be offset by day care costs, the Declaration offers no evidence to prove this assertion. No evidence was submitted to establish Debtor's earning capacity or employment opportunities other than the fact that Debtor attended college. No evidence was submitted regarding the availability or cost of day care. No evidence was submitted as to why Debtor is precluded from obtaining employment in her home. I therefore find and conclude that there remains a triable issue of fact regarding Debtor's ability to obtain employment.

Finally, Debtor has not established that she has made any effort to negotiate a stretched out payment plan on the New Loan. As cited earlier, FRCP 56 provides that summary judgment may only be granted when there are no genuine issues as to any material fact. While the family situation set forth above suggests the possibility of meeting the § 523(a)(8)(A) undue hardship requirement at trial, the evidence submitted in support of the the the Motion fails to establish that no genuine issues of material fact remain.

I therefore find and conclude that Debtor has failed to establish that no genuine issue of material fact exists regarding her present inability to make payments on the New Loan, and therefore on the issue of undue hardship.

## 2. FUTURE INABILITY TO MAKE PAYMENTS ON THE NEW NOTE

Although Debtor asserts in the Supporting Memorandum that her spouse has no prospect of increased income from his current form of employment, no evidence was submitted on this point. There is also no evidence that Debtor's spouse is incapable of obtaining more income from a different form of employment.

Although Debtor states in the Declaration that she sees no foreseeable change in her financial or family situation, Debtor does not provide any foundation for her assertion. Her ill son may improve, or, though sad to contemplate, may be put in a care facility or pass away, thereby freeing Debtor up to obtain employment.

I therefore find and conclude that Debtor has failed to establish that no genuine issue of material fact exists regarding her future inability to make payments on the New Loan, and therefore on the issue of undue hardship.

## VI. CONCLUSION

Based upon the foregoing I find and conclude that debtor is not entitled to sum-

mary judgment under either Section 523(a)(8)(A) or 523(a)(8)(B).