**In re Mark REYES and Sherill L. Reyes, Debtors.**

**Mark REYES and Sherill L. Reyes, Plaintiffs,**

v.

**OKLAHOMA STATE REGENTS FOR HIGHER EDUCATION, Defendant.**

Bankruptcy No. 90–71596.

Adv. No. 92–7050.

United States Bankruptcy Court, E.D. Oklahoma.

May 12, 1993.

As Corrected June 23, 1993.

James A. Conrady, Okmulgee, OK, for plaintiffs.

Emily Crawford, Office of the Atty. Gen., State of Okl., Oklahoma City, OK, for defendant.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

On the 30th day of April, 1993, Trial was conducted on the Complaint filed by Plaintiffs, Mark Reyes and Sherill L. Reyes, seeking declaratory relief that their separately incurred student loan debts be declared discharged by reason of undue hardship under 11 U.S.C. § 523(a)(8)(B).

Appearances at the Trial were entered by James Conrady, attorney for Plaintiffs, Plaintiffs personally and Emily Crawford, attorney for Defendant.

After consideration of the evidence presented, both testimonial and documentary, as well as stipulations and arguments of counsel on both the facts and the law to be applied herein, this Court does hereby enter the following Findings of Fact and Conclusions of Law in conformity with Rule 7052, Fed.R.Bankr.P. in this 28 U.S.C. § 157 core proceeding:

### STATEMENT OF THE ISSUE

The evidence presented and applicable law give rise to the following issue:

Would excepting from discharge Plaintiffs' student loan debts impose an undue hardship on the Debtors and their dependents under 11 U.S.C. § 523(a)(8)(B)?

## FINDINGS OF FACT

1. Plaintiffs brought this adversary proceeding seeking declaratory relief that both Plaintiffs' student loan obligations owed Defendant were dischargeable under the undue hardship provision of § 523(a)(8)(B).

2. The parties stipulated that both Plaintiffs incurred student loan obligations from July, 1985 to September, 1989.

3. The parties stipulated that, as of April 30, 1993, Plaintiff Mark Reyes' outstanding student loan debt owed Defendant was $5,473.32.

4. The parties stipulated that, as of April 30, 1993, Plaintiff Sherill Reyes' outstanding student loan debt owed Defendant was $10,950.44.

5. The parties stipulated both Plaintiffs are currently and have been in default on the student loan debts.

6. Both Plaintiffs are currently employed and have been for a sufficient length of time to establish that their income is currently stable.

7. Plaintiffs were married November 15, 1988.

8. Plaintiff Mark Reyes' current gross income is $245.30 per week or $12,755.60 per year. After deductions for federal and state taxes and FICA only, his income is $221.81 per week or $11,534.12 per year.

9. Plaintiff Sherill Reyes' current gross income is $172.00 per week or $8,944.00 per year. After deductions for taxes, her income is $155.68 per week or $8,095.36 per year.

10. Plaintiff Sherill Reyes also draws Social Security benefits on behalf of three of her children of $183.00 per month and for the year 1993 will receive ten monthly payments of $183.00 or $1,830.00 total.

11. The Plaintiffs' current joint gross income is $23,529.60 per year; after taxes, the Plaintiffs' current joint net income is $21,459.48. This amount does not include irregular oil royalties received by Plaintiff Sherill Reyes since the amounts are insignificant and timing of receipts is unpredictable.

12. Plaintiffs' estimated monthly expenses are $1,367.00 ($350.00 for rent, $202.00 for utilities, $25.00 for water/sewer, $50.00 for telephone, $40.00 for clothing, $30.00 for auto insurance, $40.00 for laundry supplies and dryer payment, $125.00 for prescription expenses, $75.00 for auto maintenance and $430.00 for food).

13. Plaintiff Sherill Reyes had four children from a former marriage, all of whom she has custody of and receives no child support.

14. Plaintiff Mark Reyes adopted the three youngest of Sherill Reyes' children in December, 1992 but has not adopted her oldest son.

15. Plaintiff Sherill Reyes' oldest son is currently hospitalized and has a history of hospitalizations for emotional problems.

16. Plaintiffs have no other dependents or family members living with them.

17. The extent of Plaintiff Sherill Reyes' current responsibility for the medical bills of her oldest son could not be quantified at the hearing due to Plaintiff Sherill Reyes' uncertainty as to the extent of available state financial assistance. Plaintiff Mark Reyes testified that previously, medical bills for the oldest son have been paid for by other entities.

18. This Court takes judicial notice of the United States Bureau of the Census Federal Poverty Guidelines as set forth by the United States Department of Health and Human Services, 58 Fed.Reg. 8287–03 (February 12, 1993) which provide that for a family of six, the poverty level guideline income is $19,270.00.

19. The Court also takes judicial notice of the Bureau of Census definition of income used in arriving at the above figures to include "total annual cash receipts before taxes from all sources." Annual Update of HHS Poverty Guidelines, 58 Fed. Reg. 8287–03 (February 12, 1993).

## CONCLUSIONS OF LAW

A. The United States Bankruptcy Code provides that:

(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(A) such loan, benefit, scholarship, or stipend overpayment first became due more than 7 years (exclusive of any applicable suspension of the repayment period) before the date of the filing of the petition; or

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

11 U.S.C. § 523(a)(8)(A) and (B)

Only subparagraph (B) of § 523(a)(8) is involved herein.

■ B. In ruling on the Plaintiff's Complaint seeking declaratory relief under 11 U.S.C. § 523(a)(8)(B), the burden of proof of undue hardship is on the debtor. *In re Keenan*, 14 Collier Bankr.Cas.2d 1344 (Bankr.D.Conn.1985); *In re Binder*, 54 B.R. 736 (Bankr.D.North Dakota 1985).

■ C. Since there is no definition of "undue hardship" in the Code, the issue is one of fact. *In re Coleman*, 98 B.R. 443 (Bankr.S.D.Ind.1989). The determination of undue hardship must also be consistent with the legislative intent of the Bankruptcy Code and the Government Student Loan Program.

D. There are many tests used by various Courts to define "undue hardship." Some Courts have used a three part method requiring the Court to determine:

(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans;

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

See, e.g., *In re Ipsen*, 149 B.R. 583 (Bankr. W.D.Mo.1992); *Brunner v. N.Y. State Higher Education Services Corp.*, 831 F.2d 395 (2nd Cir.1987).

Other Courts speak in terms of "mechanical," "good faith" and "policy" tests as follows:

The first test is a mechanical one under which the Court compares a debtor's present and projected future income and expenses and surrounding circumstances to determine whether it is reasonable to require that the loan to repaid in whole or in part. The second test is a good faith test where the Court inquires as to whether the debtor has made a good faith effort to begin repayment of the loan, to renegotiate the loan, and to minimize expenses and perhaps find a better paying job. In the third test, the Court examines whether or not the discharge of all or part of the student loan obligation would frustrate the Congressional policy underlying Section 523(a)(8). (citations omitted)

*In re Bakkum*, 139 B.R. 680 (Bankr. N.D.Ohio 1992) at p. 681.

Another test requires a showing of "truly severe and even unique difficult circumstances" to rebut the presumption that student loans are excepted from discharge. *In re Craig*, 64 B.R. 854, 857 (Bankr. W.D.Pa.1986).

The Northern District of Oklahoma prefers a "totality of the circumstances involved" to "manage the equities of each case [in] view of the legislative intent [and] policies of the Bankruptcy Code and the ... student loan program." *In re Johnson*, 121 B.R. 91 (Bankr.N.D.Okla.1990); *In re Claxton*, 140 B.R. 565 (Bankr. N.D.Okla.1992). Those cases reject any "rigid rule or simple formula" preferring

the use of judicial discretion after weighing the totality of the circumstances. See *In re Claxton, supra.*

■ E. This Court, in view of the Bankruptcy Code's objective of providing the honest but unfortunate debtor with a fresh start [See *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ], the legislative intent in defining undue hardship in terms of whether the debtor is able to maintain a "minimal standard of living" (see Report of the Commission on the Bankruptcy Law of the United States, H.R.Rep. No. 137, 93d Cong. 1st Sess. 2, 140–41 (appendix 2) (1973)), the desire of this Court to inject as much objectivity into the decision-making process as possible and provide predictability to litigants resulting in judicial economy, adopts the definition of undue hardship under § 523(a)(8)(B) as set forth in *In re Bryant*, 72 B.R. 913 (Bankr. E.D.Pa.1987).

In *In re Bryant, supra*, at pp. 915–916, the Court held:

We propose, as a starting position, to analyze the income and resources of the debtor and his dependents in relation to federal poverty guidelines established by the United States Bureau of the Census and determine the dischargeability of the student loan obligation on the basis of whether the debtor's income is substantially over the amounts set forth in those guidelines or not. If not, a discharge will result only if the debtor can establish 'unique' and 'extraordinary' circumstances which should nevertheless render the debt dischargeable. If the debtor's income is below or close to the guideline, the lender can prevail only by establishing that circumstances exist which render these guidelines unrealistic such as the debtor's failure to maximize his resources or clear prospects of the debtor for future income increases.

. . . . .

As a result, we further hold that, only if a debtor's income is significantly greater than the poverty guideline, would it become necessary to evaluate the myriad of factors and circumstances, which courts presently examine, to determine whether

the debtor's situation manifests such 'unique' or 'extraordinary' circumstances as to allow discharge of a governmentally-guaranteed student loan debt on the basis of undue hardship. Of course, in striving for objectivity, we do not intend to be rigid. If the net annual income of a debtor and his dependents is very close to the poverty line, a result of dischargeability may be in order. Further, if the debtor's income does not fall at or near the poverty guidelines, a finding of 'undue hardship' could result from the presence of 'unique' or 'extraordinary' circumstances which impose a financial burden that would render it unlikely that the debtor would ever be able to honor such obligations.

F. However, in view of the use by the Bureau of the Census of "gross income" in establishing the Federal Poverty Guidelines, i.e., "total annual cash receipts before taxes ..." this Court adopts the gross income test, rather than net income, in determining whether the debtor falls below, at or above the Federal Poverty Guidelines for purposes of defining a "minimal standard of living" and the related issue of undue hardship. This approach reduces the subjective analysis required, with the accompanying unpredictable results, which is inherent in determining undue hardship under various totality of circumstances tests.

G. This Court finds support for the *In re Bryant, supra*, approach, not only in the legislative history but also, as *Bryant* noted:

Furthermore, since these poverty guidelines are used as eligibility criterion for federal assistance programs, it appears obvious that such income levels are viewed as being below subsistence levels which cause such persons to be decreed incapable of affording to pay for certain necessary services. Thus, we feel comfortable in concluding that such persons cannot afford to repay governmentally-guaranteed student loans.

*In re Bryant, supra*, at p. 916.

This Court agrees and believes that this objective approach will limit the undesir-

able result of one debtor prevailing on a dischargeability claim of "undue hardship" in one Court while a similarly situated, or perhaps even more destitute, debtor is denied dischargeability in another Court due to a subjective "test."

■ H. Applying the Federal Poverty Guidelines to the instant case, Plaintiffs' current combined gross income from wages and Social Security benefits totals $23,529.60 per year. The 1993 Federal Poverty Guideline Level for a family of six is $19,270.00. Since "undue hardship" under 11 U.S.C. § 523(a)(8)(B) contemplates what effect a loan repayment in the future will have on the debtor and his/her dependents, this Court holds that the year in which the determination of undue hardship is made under § 523(a)(8)(B) is the proper year to apply the Federal Poverty Guideline Level. Herein, 1993 is appropriate. The Court finds that the Plaintiffs' level of current income is stable and likely to continue for the foreseeable future.

I. This Court finds that the Plaintiffs' combined gross income of $23,529.60 is significantly above the Federal Poverty Guidelines for a family of six of $19,270.00. Therefore, this Court must find unique or extraordinary circumstances in order to find that excepting these debts from discharge would create an undue hardship on Debtors and their dependents despite their level of income.

J. The only evidence of this nature presented concerned the periodic hospitalizations and related medical problems of Plaintiff Sherill Reyes' eldest son. However, neither Plaintiff was able to quantify to this Court the financial impact, either past or present, of such hospitalizations and/or medical problems other than evidence of a $75.00 monthly prescription expense. The Debtors were unable to advise the Court the extent of the financial burden, if any, which would be created due to uncertainty over the extent of state aid in covering whatever expenses were incurred. In fact, Plaintiff Mark Reyes' testimony was that previously most or all of these expenses were paid by other entities and had created no out of pocket expense to him.

K. Therefore, the Court is unable to find any unique or extraordinary circumstances present so as to justify a finding of undue hardship in this case where Debtors' combined income is substantially above the Bureau of the Census' Federal Poverty Guidelines for 1993. However, it is hoped that Defendant will temper its collection efforts herein in view of Plaintiffs' available resources.

IT IS THEREFORE ORDERED that the Plaintiff's Complaint requesting declaratory relief under 11 U.S.C. § 523(a)(8)(B) is denied.

IT IS FURTHER ORDERED that the Plaintiffs' student loan debts are hereby declared nondischargeable pursuant to 11 U.S.C. § 523(a)(8)(B) and judgment will be entered on behalf of Defendant herein on Plaintiffs' Complaint by separate order of this Court.