**In re Ana Irma ROA–MORENO, Debtor.**

**Ana Irma ROA–MORENO, Plaintiff,**

v.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; Payco General American Credits, Inc.; Nancy Curry, Chapter 13 Trustee, Defendants.**

Bankruptcy No. LA 89–51481.
Adv. No. LA 96–02897.

United States Bankruptcy Court,
C.D. California.

March 6, 1997.

Robert R. Leon, Slate and Leoni, A Professional Corporation, Los Angeles, CA, for Debtor.

Nora M. Manella, United States Attorney, Leon W. Weidman, Assistant United States Attorney, Chief, Civil Division, and Michael C. Johnson, Assistant United States Attorney, Los Angeles, California, for Defendants.

## OPINION IN SUPPORT OF ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

VINCENT P. ZURZOLO, Bankruptcy Judge.

### BACKGROUND FACTS

The issue central to this adversary proceeding is whether the plaintiff/debtor

("Debtor") is entitled to a discharge of her student loan obligations under 42 U.S.C. § 292f(g). The debtor filed a Chapter 13 petition on April 10, 1989. The debtor confirmed a plan which paid the defendant, United States Department of Health and Human Services ("Defendant"), $53,353.96 in satisfaction of its claim. The debtor consummated her plan and received her discharge on April 26, 1994. Debtor filed this adversary proceeding on August 13, 1996 to determine the dischargeability of $33,893.36 which Defendant claims it is owed in post-petition interest on its underlying claim.

Debtor and Defendant filed timely motions for summary judgment. The issues are:

1. Whether the expiration period for Debtor seeking a discharge of her HEAL loans is five or seven years;

2. Whether the automatic stay of 11 U.S.C. § 362(a) [1] tolled the expiration period;

3. Whether post-petition interest may accrue on Defendant's claim; and

4. Whether it would be unconscionable not to allow discharge of Debtor's obligations to Defendant.

As discussed below, issues 1, 2 and 3 are issues of law which may be resolved on summary judgment. Issue 4 is a material fact of substantial controversy which may not be properly adjudicated by way of summary judgment. F.R.B.P. 7056. The following analysis shall constitute my findings of fact and conclusions of law as required under Federal Rule of Bankruptcy Procedure 7052 as to issues 1, 2 and 3. Issue 4 is an issue properly resolved at trial.

*The Expiration Period*

█ While both parties agree that title 42 of the United States Code applies in this case, there is a dispute as to whether 42 U.S.C. § 294f(g) or 42 U.S.C. § 292f(g) applies. Defendant, while maintaining that the expiration period of seven years is applicable in this case, fails to offer any evidence or persuasive argument why the latter statute is entitled to retroactive effect.

42 U.S.C. § 294f(g), which was in effect at the time Debtor filed her Chapter 13 petition states as follows:

A debt which is a loan insured under the authority of this subpart may be released by a discharge in a bankruptcy under any chapter of Title 11 only if such discharge is granted—

(1) after the expiration of the five-year period beginning on the first date when repayment of such loan is required, as specified in subparagraphs (B) and (C) of section 292(a)(2) of this title, when repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be **unconscionable;** and

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) of this section to the borrower and the discharged debt.

42 U.S.C. § 294f(g) (1997) (emphasis added).

42 U.S.C. § 292f(g) was amended in 1993 when Congress increased the expiration period from when the loan first became due from five to seven years "exclusive of any period after such date in which the obligation to pay installments is suspended." 42 U.S.C. § 292f(g) (1993) *as amended by* Pub.L. 103–43, § 2014(a)(2)(A) (1993). Courts should apply the statute in effect at the time of bankruptcy filing unless there is a clear directive from Congress to do otherwise. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) (Reasoning that Congressional enactments should not be given retroactive application unless their language requires it.).

In *In re Barrows,* 159 B.R. 86 (Bankr. D.N.H.1993), the court considered the issue of retroactive application of 42 U.S.C. § 292f(g) in deciding whether a five or seven year expiration period controlled. The *Barrows* court concluded that application of the seven year statute would constitute a manifest injustice to the debtor because of the drastic change in entitlement contemplated by the debtor when she originally filed her petition versus when she requested her discharge due to the intervening change in law.

---

1. Unless otherwise noted, all statutory citations refer to Title 11 of the United States Code.

*Id.* at 89. *See also In re Nelson,* 183 B.R. 972 (S.D.Fla.1995) (refusing to retroactively apply 42 U.S.C. § 292f(g) in the absence of clear Congressional intent to do otherwise). Since there is no language contained in 42 U.S.C. § 292f(g) directing retroactive application, I conclude that the five-year expiration period enunciated in 42 U.S.C. § 294f(g) is the applicable expiration period in this case.

As stated below, it does not matter whether the expiration period is five or seven years in this case. Defendant admits that the repayment date for the loan was at least on April 1, 1989. There is no evidence that subsequent to April 1, 1989, Debtor was granted a deferment or other forbearance which would cause a suspension of payments and consequently toll the expiration period. The only support advanced by Defendant for why the expiration period should be tolled is the imposition of the automatic stay during the pendency of the debtor's Chapter 13 plan. As I explain below, the imposition of the automatic stay did not toll the expiration period. Thus, even applying the seven year period, the expiration period would have expired on August 1, 1996.

*Automatic Stay and Suspension Period of Loan Payments*

■ The next issue of law to be resolved is whether the automatic stay tolled the dischargeability period within the context of 42 U.S.C. 294f(g). Defendant maintains that the expiration period was tolled by virtue of § 362(a)[2]. The only authority provided in support of this proposition is *In re Saburah,* 136 B.R. 246 (C.D.Cal.1992). *Saburah* dealt with a Chapter 7 debtor who sought to discharge his student loan pursuant to § 523(a)(8)(A). In the portion of the opinion relevant to this case, the court reasoned that the period in which the automatic stay was in effect operated as an "applicable suspension period" within the context of § 523(a)(8)(A) because the creditor was prohibited from taking action to collect payments due on the debt. *Id.* at 254. The court did not cite any authority in support of this conclusion. *Id.*

*Saburah* is inapplicable to the instant case for several reasons. First, § 362 is bereft of any language indicating that the automatic stay operates as an "applicable suspension period" for student loans. Second, *Saburah* dealt with a Chapter 7 liquidation while this case is a Chapter 13 reorganization in which Debtor made monthly payments to Defendant. I do not find the reasoning of *Saburah* to be persuasive or applicable to the facts of this case. Finally, § 362(a) does not provide that payments do not become due, contrary to the conclusion of the *Saburah* court. 11 U.S.C. § 362(a). Thus, the automatic stay does not toll the five-year expiration period vis-a-vis 42 U.S.C. § 294f(g).

*Accrual of interest on loan payments*

■ Debtor argues that post-petition interest should not accrue on Defendant's claim. The issue of whether Debtor is personally liable for post-petition interest which accrues on nondischargeable debts is an issue of law that may be resolved through summary judgment.

The seminal precedent is *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964). In *Bruning,* the Supreme Court held that personal liability for tax debts survives the bankruptcy. *Id.* at 361, 84 S.Ct. at 908. The Court also reasoned that post-petition interest accrues on nondischargeable tax debts. *Id.* at 363, 84 S.Ct. at 909. The reasoning behind this decision is that Congress did not intend to remove personal liability for interest on nondischargeable debts even though the estate may not be liable. *Id.* at 362–63, 84 S.Ct. at 908–09.

Other courts have applied the rule that debtors are personally liable for post-petition interest on nondischargeable tax debts to nondischargeable student loan debts. *See,*

---

**2.** Section 362 provides in relevant part:

"Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title ... operates as a stay applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ...."

11 U.S.C. § 362(a).

*e.g., Leeper v. Pennsylvania Higher Education Assistance Agency,* 49 F.3d 98 (3rd Cir.1995) (holding that interest may accrue on nondischargeable student loans throughout the duration of a Chapter 13 plan); *In re Shelbayah,* 165 B.R. 332, 337 (N.D.Ga.1994) (reasoning that disallowance of post-petition interest for nondischargeable claim within debtor's Chapter 13 plan did not effect debtor's future liability for such interest).

Debtor argues that Defendant is precluded from asserting any right to post-petition interest because it did not make any such request at the time of plan confirmation. Debtor's argument fails to distinguish between estate liability for post-petition interest, which is proscribed by the Bankruptcy Code, and a debtor's personal liability for interest on a nondischargeable debt, a distinction made by the Court in *Bruning v. United States,* 376 U.S. 358, 84 S.Ct. 906, 11 L.Ed.2d 772 (1964).

*Bruning* addressed the issue of whether a debtor was personally liable for interest on a nondischargeable tax debt. *Bruning,* 376 U.S. at 358, 84 S.Ct. at 906. The Court reasoned that a debtor maintained personal liability for the post-petition interest because Congress intended that personal liability for unpaid tax debts would survive the bankruptcy. *Id.* at 361, 84 S.Ct. at 908. Other courts have applied *Bruning* to other types of nondischargeable debts, including student loans. *See generally Ridder v. Great Lakes Higher Education Corp.* 171 B.R. 345 (Bankr. W.D.Wis.1994); *In re Sullivan,* 195 B.R. 649 (Bankr.W.D.Tx.1996); *In re Jordan,* 146 B.R. 31 (D.Colo.1992).

■ The Bankruptcy Code, which was enacted after *Bruning,* specifically precludes estate liability for post-petition interest. 11 U.S.C. 502(b)(2) [3]. However, the Bankruptcy Code does not prevent interest from accruing on the underlying claim. *See Leeper,* 49 F.3d at 101–04 (3rd Cir.1995); *In re Sullivan,* 195 B.R. 649 (Bankr.W.D.Tx.1996). Debtor devotes a considerable amount of her argument to the premise that had she been aware of Defendant's "secret" intention to

collect post-petition interest, "she could have amended her plan and increased her plan payment to accommodate this debt ..." Defendant could not have amended its claim prior to confirmation, as Debtor suggests, to include post-petition interest because § 502(b)(2) expressly prohibits estate liability for such interest. 11 U.S.C. § 502(b)(2). Debtor similarly could not have provided for post-petition interest in the plan for the same reason. *Id.* Nevertheless, Debtor retains personal liability for post-petition interest if the underlying debt is nondischargeable.

■ Debtor's alternative argument is that she paid the defendant 100% of its claim so is no longer liable for any post-petition, accrued interest. The debtor cites *In re Wasson* for the proposition that the Bankruptcy Code does not allow post-petition interest on a nondischargeable student loan when the underlying claim is paid in full by the bankruptcy estate. *In re Wasson,* 152 B.R. 639 (Bankr.D.N.M.1993).

Most of the courts which have considered the issue have disapproved of *Wasson's* analysis because it reasons that post-petition interest is not part of a creditor's claim under § 502. *See, e.g., In re Sullivan,* 195 B.R. 649 (Bankr.W.D.Tx.1996); *Leeper v. Pennsylvania Higher Education Assistance Agency,* 49 F.3d 98 (3rd Cir.1995); *In re Branch,* 175 B.R. 732 (Bankr.D.Neb.1994); *In re Shelbayah,* 165 B.R. 332 (Bankr.N.D.Ga.1994).

*In re Sullivan,* 195 B.R. 649 (Bankr. W.D.Tx.1996), for example, correctly distinguishes between post-petition interest accruing on a creditor's claim and the estate's liability for such interest. *Id.* at 653. *Sullivan* stands for the proposition that post-petition interest, while not allowable as a claim against the estate, continues to accrue. A creditor may collect on its claim for post-petition interest against a debtor upon termination of the automatic stay. *Id. See also Leeper,* 49 F.3d at 102 (rejecting *Wasson's* analysis because it did not distinguish between disallowance of unmatured interest un-

---

**3.** Section 502(b)(2) states that the court "shall allow such claim in such amount, except to the extent that—

(2) such claim is for unmatured interest." 11 U.S.C. § 502(b)(2).

der § 502 and the accrual of interest on the underlying claim for which a debtor may be personally liable). If the underlying debt is nondischargeable, then the accrued interest is also nondischargeable. *Bruning,* 376 U.S. at 361, 84 S.Ct. at 908.

I agree with the *Sullivan* and *Leeper* courts' disapproval of *Wasson's* conclusion that the Bankruptcy Code disallows a creditor's claim for post-petition interest on a nondischargeable student loan when the creditor's claim was "paid in full" by the estate. *Leeper,* 49 F.3d at 102; *Sullivan,* 195 B.R. at 652. Defendant's claim was not paid in full because it did not receive post-petition interest by virtue of § 502(b)(2). The estate is not liable for post-petition interest and that portion of Defendant's claim remains unpaid. *Id. Bruning* and its progeny have made clear that a debtor is personally liable for the unpaid post-petition interest if the underlying claim is not discharged.

■ The fact that Defendant did not object to Debtor's plan is inconsequential because Defendant could not have contested noninclusion of its claim for post-petition interest in Debtor's plan. *Compare Ridder v. Great Lakes Higher Education Corp.,* 171 B.R. 345, 347 (Bankr.W.D.Wis.1994) (holder of claim of nondischargeable student loan had no reason to object to Chapter 13 plan because post-petition interest could not be included as part of claim) *with In re Gregory,* 705 F.2d 1118 (9th Cir.1983) (holding that creditor with notice of bankruptcy could have objected to confirmation of Chapter 13 plan in order contest treatment of claim).

I therefore conclude that Debtor remains personally liable for the accrued post-petition interest in the defendant's claim if the claim is not discharged.

*Unconscionability*

Unfortunately, Congress was anything but clear when it enacted 42 U.S.C. § 294f(g)(2). The statute fails to provide any explanation or guidance as to what constitutes unconscionability. In light of any controlling Ninth Circuit authority interpreting the unconscionability element and the dearth of any statutory reference to what a factual finding of unconscionability would entail, I look to the plain meaning of the word.

Unconscionability is defined as "a doctrine under which courts may deny enforcement of unfair or oppressive contracts because of procedural abuses arising out of the contract formation, or because of substantive abuses relating to terms of the contract...." Black's Law Dictionary 1524 (6th ed. 1990). Unconscionable conduct includes "absence of meaningful choice on the part of one of the parties, to a contract together with contract terms which are unreasonably favorable to the other party." *Id.* This definition is of little help because it defines unconscionability in the context of contract law, the rubric in which it is commonly applied. I am asked to grant a discharge of debt on the basis of unconscionability as directed by 42 U.S.C. § 294f(g), not to reform or rescind a contract between two parties.

Webster's Ninth Collegiate Dictionary provides a more generic explanation of unconscionability by defining it as "shockingly unfair or unjust." Webster's Ninth New Collegiate Dictionary 1284 (1990). This is the definition that most courts which have considered the issue have attached to unconscionable. *See, e.g., In re Quinn,* 102 B.R. 865 (Bankr.M.D.Fla.1989) (Concluding that unconscionability is defined as "shockingly unfair or harsh."); *In re Hines,* 63 B.R. 731, 736 (Bankr.S.D.1986) (noting that "unconscionable defies precise definition and is ... likened to beauty in that it appeals to the senses and is found in the eyes of the beholder.").

I am troubled that the term "unconscionability" as used in 42 U.S.C. § 294f(g)(2) is so vague and undefined. A legal test without at least a partially objective component creates confusion for both judges and litigants. A test that is grounded upon objective factors allows courts and litigants some certainty and predictability. As one court has observed, "the test which we propose strives to place the element of objectivity into the process of decision making in this area. We feel that such a test will decrease, if not eliminate, the resort to the unbridled subjectivity which seems to pervade many of the decisions in this area." *Bryant v. Pennsylvania*

*Higher Education Assistance Agency,* 72 B.R. 913 (E.D.Pa.1987) *superseded by statute as stated in, In re Fox,* 163 B.R. 975 (Bankr. M.D.Pa.1993). Other courts have been confronted with the same dilemma: how to formulate a test with an objective component that provides a modicum of consistency in application yet is adaptable to each particular set of facts and circumstances before the court. *See, e.g. Reyes v. Oklahoma State Regents for Higher Education,* 154 B.R. 320 (Bankr.E.D.Okla.1993) (adopting objective test for "undue hardship" discharge because of unpredictable results associated with subjective tests).

The *Bryant* court dealt with a student loan under § 523(a)(8)(B). The court proposed that a debtor whose income and resources were substantially over the federal poverty guidelines would be discharged only if the debtor could establish unique and extraordinary circumstances which would merit a discharge. *Bryant,* 72 B.R. at 917. If the debtor's income is below or close to the guideline, the creditor must establish circumstances exist which "render these guidelines unrealistic, such as the debtor's failure to maximize his resources or clear prospects of the debtor for future income increases." *Id.* at 915.

In *In re Quinn,* the court articulated a set of factors which govern the standard of unconscionability. Those factors are as follows:

1. Income of the debtor;

2. Earning ability;

3. Health;

4. Dependents;

5. Age;

6. Educational background;

7. Accumulated wealth; and

8. Professional degree.

*Quinn,* 102 B.R. at 867.

 Some courts have concluded that there is a difference between the dischargeability of HEAL loans governed under 42 U.S.C. § 294f(g) and student loans within the purview of § 523(a)(8)(B). It is asserted, with no authority, that unconscionability, however ill-defined, entails a more rigorous and stricter yardstick by which dischargeability is measured than the "undue hardship" provision of the § 523(a)(8)(B). Courts that have considered this issue have generally concluded that the burden to prove unconscionability rests with the debtor.[4] *See Quinn,* 102 B.R. at 868, *In re Malloy* 155 B.R. 940, 945 (E.D.Va.1993), *aff'd,* 23 F.3d 402 (4th Cir.1994); *In re Johnson,* 787 F.2d 1179, 1182 (7th Cir.1986); *In re Rice,* 78 F.3d 1144 (6th Cir.1996) (reasoning burden on debtor to prove entitlement to discharge under unconscionability standard); *In re Steuber,* 200 B.R. 31 (Bankr.W.D.Mo.1996) (stating that debtor has the burden to prove unconscionability). While I agree that Debtor has the burden of proving that her student loan is entitled to discharge, I do not concur that the unconscionability standard is necessarily more stringent than the undue hardship provision of § 523(a)(8)(B). 42 U.S.C. § 294f(g) does not provide a definition of unconscionability and the legislative history pertaining to the statute is silent as to what Congress had in mind when it enacted unconscionability as the second prong of the nondischargeability test. I see no rational basis to distinguish between undue hardship and unconscionability in light of the dearth of interpretative guidance provided by 42 U.S.C. § 294f(g).

 The Poverty Guidelines are maintained by the Bureau of the Census in order to gauge the income thresholds which comprise "poor" individuals and families. The data representing the Poverty Guide-

---

4. Section 523(a)(8)(B) excepts from discharge a debt:

... for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless—

(B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.... 11 U.S.C. § 523(a)(8)(B).

lines were complied from information culled in the March, 1996 Current Population Survey. Poverty status is defined by groups of income thresholds that vary depending on family composition and size. The poverty thresholds are based on pre-tax money income and do not include capital gain income or noncash benefits such as health insurance, food stamps, Medicare, Medicaid or public housing. I agree with the reasoning of the courts which have endeavored to employ at least a partially objective test in gauging the discharge of HEAL loans. The Poverty Guidelines provide at least a modicum of objectivity in deciding whether it would be unconscionable not to discharge the HEAL loan. I conclude that Debtor, as the party who is seeking to obtain the discharge of her loan, should be required to demonstrate that her income and resources place her and her dependents below the level set by the 1995 Poverty Guidelines published by the Bureau of Census and attached as Exhibit A. Further, Debtor must also prove that her economic situation is not likely to improve in the forseeable future by applying the *Quinn* factors to her particular economic circumstances.

## CONCLUSION

■ I conclude that the issues 1, 2 and 3 may be resolved without substantial controversy. First, the seven-year expiration period of 42 U.S.C. § 292f(g) is not entitled to retroactive effect and the five-year expiration period of 42 U.S.C. § 294f(g), which was the period in effect at the commencement of Debtor's case, is the applicable period in this case. Second, the automatic stay does not toll the expiration period within the context of 42 U.S.C. § 294f(g). Third, Defendant's claim is entitled to accrue post-petition interest for which Debtor, but not the estate, is personally liable. Fourth, the issue of unconscionability is a material fact which is actually and in good faith controverted. The parties should apply their respective evidence and arguments pertaining to this issue to the test that I have outlined above. Debtor has the burden of proving that not discharging the debt would place her and her dependents below the poverty line guidelines established by the U.S. Census Bureau.

Further, Debtor must also prove that her economic situation is unlikely to improve in the forseeable future by proving that the *Quinn* factors outlined above favor her.